JESSE U. MILLER, Appellant, v. BENJAMIN M. MILLER, Administrator, Respondent.

Kansas City Court of Appeals.    February 3, 1913.

1. **BILL AND NOTES:** Statute of Limitations: Application of **Payment.** Where a person, indebted to another on several notes all barred by the Statute of Limitations, sends money to the holder of said notes, intending to make a general payment on his barred indebtedness, with knowledge of the effect his payment would have thereon, the creditor, in the absence of directions on which barred note he should credit the payment, has the right to elect on which note the credit shall be made.

2. **STATUTE OF LIMITATIONS:** One of Repose:. Debt not Destroyed. The Statute of Limitations is one of repose, the debt not being annihilated but only its enforcement prevented.

Appeal from Johnson Circuit Court.—*Hon. A. A. Whitsitt,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. Suddath & Son* for appellant.

(1)    Statute of Limitations is not a statute of extinguishment but merely a statute of repose. Secs. 1887, 1888, R. S. 1909; McMerty v. Morrison, 62 Mo. 140; Boyce v. Railroad, 168 Mo. 583; Cytron v. Transit Company, 205 Mo. 692; Cowan v. Mueller, 176 Mo. 192; 25 Cyc. 983, subdiv. "B." (2) Where defendant made payments without directing which item they were to be applied to, he is taken to have authorized plaintiff to apply the payment where it will best subserve his own interests. Shortridge v. Pardee, 2 Mo. App. 363; Beck v. Haas. 31 Mo. App. 180; Beck v. Haas, 111 Mo. 264; Middleton v. Frame, 21 Mo. 412; 18 Am. and Eng. Ency. Law (1 Ed.), 239; Waterman v. Younger, 49 Mo. 413; Genter v. Kemper, 58 Mo. 567. (3) It is not necessary for the plaintiff to prove

both that the indorsements were made when they purport to be made and that the payment evidenced thereby was actually made by the defendant, proof of either the one or the other is sufficient. Gardener v. Early, 78 Mo. App. 351; Crow v. Crow, 124 Mo. App. 120; Regan v. Williams, 185 Mo. 620; Brown v. Carson, 132 Mo. App. 371. (4) Payment on a note after the bar of the statute has become complete will revive the cause of action upon the whole debt. Secs. 1909, 1910, 1911, R. S. 1909; Shannon v. Austin, 67 Mo. 485; Johnson v. Johnson, 81 Mo. 331; Bender v. Markle, 37 Mo. App. 234; Waltemar v. Schnick's Estate, 102 Mo. App. 133. (5) A check or draft received and cashed is presumed to be given in payment of a debt and not as a loan. Abbott's Trial Evidence, secs. 245, 803; Bunting v. Allen, 18 N. J. Law 299; Headley v. Reed, 2 Cal. 322; Ashley v. Vischer, 24 Cal. 322; Poucher v. Scott, 98 N. Y. 422.

*James A. Kemper* for respondent.

(1) To entitle plaintiff to recover herein, it must appear that the deceased made a payment of twenty-five dollars on the note sued on, as an appropriated payment; or that the indorsement or credit appearing thereon was made by the authority and with the knowledge and consent of the payor, intending thereby to revive the debt. Crow v. Crow, 124 Mo. App. 120; Brown v. Carson, 132 Mo. App. 376; Goddard v. Williamson, 72 Mo. 131; Regan v. Williamson, 88 Mo. App. 586; Regan v. Williamson, 186 Mo. 630; Loewer v. Haug, 20 Mo. App. 163; Phillips v. Mahan, 52 Mo. 197; Wilden v. McAllister, 91 Mo. App. 451; Gardner v. Early, 78 Mo. App. 346. (2) Plaintiff cannot recover herein unless it appears that the deceased made a payment of twenty-five dollars on said demand, intending thereby to revive the unpaid portion of said

indebtedness.   Compton v. Johnson, 19 Mo. App. 95; Regan v. Williamson, 88 Mo. App. 586; Regan v. Williamson, 185 Mo. 630; Wilden v. McAllister, 91 Mo. App. 451; 25 Cyc. 1373; Loewer v. Haug, 20 Mo. App. 163.   (3)  A payment on a barred debt does not rescue the debt from the bar of the Statute of Limitations, unless it was made with the knowledge and consent of the payor and with the intention and for the purpose of reviving and creating a new promise.   25 Cyc. 1373; Regan v. Williamson, 88 Mo. App.586; Regan v. Williamson, 185 Mo. 630; Wilden v. McAllister, 91 Mo. App. 451; Murdock v. Woteman, 27 L. R. A. 418; Bender v. Blessing, 31 N. Y. Sup. 48.   (4)  A credit or indorsement placed on a note, after the completion of the bar of the Statute of Limitations is no evidence of payment and does not remove the bar of the statutes unless it be shown that it was placed there by the authority and consent of the maker, intending thereby to create a new debt or obligation.   Craig v. Court, 12 Mo. 99; Phillips v. Mahan, 52 Mo. 197; Wells v. Hargrave, 117 Mo. 563; Regan v. Williamson, 88 Mo. App. 586; Regan v. Williamson, 185 Mo. 630; Wilden v. McAllister, 91 Mo. App. 451.   (5)  Statements by the decedent to any person, other than the holder of the debt or obligation, or his known agent, incompetent for any purpose whatever and should be excluded. Williamson v. Williamson, 50 Mo. App. 194; Brown v. Carson, 132 Mo. App. 371; 1 Beach on Contracts, p. 196, sec. 163.   (6)  The mere fact that the decedent sent a draft for the sum of twenty-five dollars to the claimant herein, nine years after the bar of the statute was complete against the note sued on, creates, no presumption of payment, in absence of any evidence showing that the same was made as such payment. The Statute of Limitations is not a statute of presumption, but one of repose.  3 Parsons on Contracts (7 Ed.), sec. 1, pp. 67 to 733.  (7)  Where two or more clear and undisputed debts  exist, all  of  which  are

barred by the statute, and money is paid, but not appropriated to either debt by the debtor, the creditor cannot appropriate the payment, and thereby take the debt to which he applies it out of the statute. 3 Parsons on Contracts (7 Ed.), sec. 3, par. 76, p. 83; Pauly v. Williams, 1 Gray, 630; Heinlin v. Castro, 22 Cal. 100.

TRIMBLE, J.—Suit against the estate of Andrew S. Miller, deceased, on a note for $1258.25 dated February 23, 1892, due one day after date, payable to appellant with an alleged credit thereon of $25, March 8, 1910. The note was duly allowed by the probate court from which an appeal to the circuit court was taken by a daughter of the deceased, one of his heirs and creditors. In the latter forum a jury was waived and the case tried by the court.

Claimant and deceased were brothers. The genuineness of the note was not disputed. The signature was duly proved. The defense was limitations. On its face the note was barred but on the back was the following indorsement: "Received on the within note twenty-five (25) dollars, Mar. 8, 1910."

The evidence offered by appellant in support of this alleged indorsement consisted of testimony concerning declarations made by the deceased showing an intention on his part to pay appellant, and also evidence of the circumstances under which appellant received the $25 from the decedent. A sister of deceased testified that about four years or less before he died, she asked decedent to pay her husband the money, or some of the money, owing to him, and decedent replied that if he ever got any money he was going to pay his brother Jesse; since they could do without it easier than Jesse could. About a year and a half before he died, decedent told a neighbor, William Schunaman, that he owed Jesse considerable money and ought to pay it but added, "I ain't just got it to

do it just now." Benjamin Miller, the defendant administrator, a son of the deceased, testified that his father always told him he intended to pay his Uncle Jesse if he got able, and the last time he said that was about two weeks before he died.

E. C. Littlefield, an attorney who had transacted much of decedent's legal business during his lifetime, testified that decedent spoke to him about his indebtedness, and on several occasions said that he wanted to pay his brother if he was ever in a position to do so; that he wanted to pay him; that he felt more like paying him than some of his neighbors; some of his other indebtedness he didn't want to pay at all. Witness further testified that in January or February, 1910, within two or three months of decedent's death, decedent told him that he thought he would be able to pay some on his indebtedness before a great while, and either at that or at another time decedent asked the witness what effect a payment would have on a debt that was barred by the Statute of Limitations, and the witness told him that it would revive it.

It was further shown in evidence that decedent on the 3rd of March, 1910, went to the bank at Knob Noster and signed a check on his account therein for $25 payable to "Miller Draft or bearer," and with it procured a draft payable to the order of appellant for $25. This draft was sent to appellant who indorsed and cashed the same, and it was returned to the bank at Knob Noster in the usual course of business paid and canceled. It seems that appellant held two other notes against deceased besides the one credited with the $25 and sued on. All of the notes, however, were barred at the time the $25 was paid. No evidence was offered on the part of respondent.

The trial court refused declarations of law numbered 1 and 2 asked by appellant, the first of which declared that where one person is indebted to another and the debtor sends money to the creditor by check or

Miller v. Miller.

draft it is presumed to be in payment of a debt and not a loan or gratuitous gift, and that, if the court should believe from the evidence, that the deceased sent plaintiff a draft for $25 on March 3, 1910, the presumption is it was sent to him to apply upon the note sued on. The second declaration was to the effect that, if the court should find from the evidence, that defendant made the $25 payment to the plaintiff at the time specified, without directing the claimant upon what indebtedness it was to be applied, then the mere fact of sending the money, without any direction as to where it should be applied, authorized the plaintiff to apply such payment where it would best subserve his own interests, and that if the court should find that defendant owed plaintiff more than one note, and that defendant sent plaintiff $25 without directing where it should be applied, then claimant had the right to apply said payment upon any of said notes which he saw fit to apply it to, and where it would do plaintiff the most good.

For the defendant the court gave a declaration that before plaintiff can recover it must be shown that defendant paid plaintiff $25 at the time shown in evidence, and that the same was intended as a payment on the note in question, and was made as an appropriated payment theron, but the mere fact that decedent on the 3rd day of March, 1910, sent to plaintiff a draft for $25 by mail is not conclusive that the same was made as such payment. To this appellant objected, as also to the refusal of the declarations asked by him.

The trial court rendered judgment for respondent and plaintiff appealed. The evidence was not contradicted, and, as the record shows the judgment was not based upon a lack of belief in the testimony, the question presented to the trial court was purely a question of law, namely, does the sending of the $25, under the above state of facts, constitute a payment on said note by the deceased maker sufficient to

revive the cause of action? And that is the principal question here.

In order to reach a correct conclusion herein it should be borne in mind that our Staute of Limitations does not extinguish a debt, but simply withholds or prevents the remedy. The wording of our statute is to this effect. [R. S. Mo. 1909, secs. 1887, 1888; see also Cowan v. Mueller, 176 Mo. 192, l. c. 198; Cytron v. Transit Co., 205 Mo. l. c. 699.] In other words, it is a statute of repose merely. It does not annihilate the debt but only prevents it from being enforced against the debtor. This view of the statute is important not only in determining the admissibility of the declara-- tions of deceased, but also in passing upon the right of the appellant to apply the payment to the particular note sued on.

Objection was made by respondent to the testimony concerning decedent's declarations, and he insists here that they cannot be considered because they were not made to or in the presence of appellant, nor made at the time the $25 was paid, and did not create a new promise or obligation to pay said indebtedness or any part of it. The testimony, however, was not for the purpose of proving the indebtedness, nor to show that a payment of money actually passed from deceased to appellant. It was only to show the intention deceased had when he obtained a draft and sent it to his brother, namely, his intention to make a payment upon his indebtedness, and that too with full knowledge that its effect would be to revive the debt. It was offered to characterize and explain an act thoroughly established by other evidence. Such being the case, it was clearly admissible.

So that, under the facts, herein, we are dealing with a case in which the debtor not only made a general payment to his creditor, but did so desiring that his indebtedness to his creditor should be paid, and knowing that, if payment was made, the effect would be to

revive, and make possible the collection of, the whole debt.

When deceased sent the $25 to, and the same was received by, appellant, the law presumes it was in payment of a debt and not a gift or loan. [Bunting v. Allen, 18 N. J. Law, 299; Headley v. Reed, 2 Cal. 322; Poncher v. Scott, 98 N. Y. 424.] And a payment on a note, after the bar of the statute has become complete, will revive the cause of action upon the whole debt. [R. S. 1909, secs. 1909-10-11; Shannon v. Austin, 67 Mo. l. c. 486-7.] Of course if a payment is made under circumstances or with facts accompanying it which forbid and contradict the implication usually arising from such part payment, then it does not revive the whole debt. But from the mere fact of payment of a part of the debt the law presumes an acknowledgment or new promise. If such partial payment is made without intending it should operate as an acknowledgment of the residue, such lack of intent must be evidenced by some act of the payor and should be made to appear by him. The holder makes a prima facie case by merely showing a part payment on the debt without going further. [Bender v. Markle, 37 Mo. App. l. c. 248.]

But respondent contends in substance that, in the case at bar, there is nothing to show that deceased intended to make a payment upon this particular note or upon any indebtedness; that before the note can be taken out of the operation of the statute it must appear that the deceased not only made a payment to his brother, but that he made it as a payment on this note and intended and authorized the credit to be placed thereon. With regard to this last, the placing of the credit on the note, it may be observed that it is the fact of the partial payment of the note, and not the formal crediting of such payment on the back of it, which revives the debt. [Elsea v. Pryor, 87 Mo. App. 157.] As to the other part of the contention,

that not only must a payment be shown but it must be a payment intended by deceased to be applied on this note, there is this to be said: It is the general rule, and has been so held in a number of cases, that where a debtor makes a payment, without directing where it shall be applied, he is deemed to have authorized his creditor to place it where it will best subserve the creditor's own interests. [Beck v. Haas, 111 Mo. l. c. 268; Shortridge v. Pardee, 2 Mo. App. 363; Middleton v. Frame, 21 Mo. 412.] Of course such application must not be made by the creditor so as to result inequitably to the debtor. But this does not mean that the creditor must apply the payment to the smaller, or even to one only, of two or more debts. [Beck v. Haas, supra, l. c. 270.] True, many of the decisions announcing the above general rule deal with debts that were not barred at the time the payment was made. But is there anything in principle to prevent its application to a barred debt in a case where the debtor shows by his declarations that he was intending to pay a barred indebtedness and understood the effect of such payment? If the creditor held more than one claim against the debtor, one of which was not barred and the others were, very likely a general payment made by the debtor, without direction as to where it should be applied, ought to be deemed a payment on the debt that could be enforced and not on those unenforcible. But that is not this case. Here the creditor held several notes all of which were barred. The debtor knew they were barred but desired to pay them and, after ascertaining what effect a payment would have, sent $25 to his creditor, who applied it on the note sued on. Now, if none of the notes had been barred, the creditor, under the authority of Beck v. Haas, supra, l. c. 270, could, in the absence of directions, have divided the payment and applied it on all of his notes, or placed it where it would best subserve his own interests. This being so,

it would seem that there is no reason either in princi-
ple or authority for holding that he cannot apply it
on any particular note where all of them are barred
and the debtor is intending to pay on barred indebted-
ness. Especially is this true when we remember that
limitation does not extinguish the debt but merely
brings repose to the debtor which he can divest him-
self of by merely making a payment on the debt. This
he can do as it is permitted by section 1911, Revised
Statutes 1909. The case of Wilden v. McAlister, 91
Mo. App. 446, is cited as contrary to this view. It
holds that a general payment made to a creditor will
not take a barred debt out of the operation of the
statute unless it be an appropriated payment on the
part of the debtor. This merely means that before
a partial payment applied by a creditor to a barred
debt can have the effect of taking it out of the stat-
ute, the payment must be made under such circum-
stances as will show that the debtor is recognizing
the debt as still in force, and by his act, and not that
of the creditor, has revived it. This is borne out by
the statement on page 453 that "The part payment
of a debt barred by the Statute of Limitations takes
it out of the operation of the statute on the theory
that the debtor making the payment recognizes the
continued existence of the debt." In this Wilden case,
the evidence offered to show this was not admissible,
but even if it had been, it showed that the debtor paid
the money, not as a payment on a debt, but rather on
account of the creditor's sick and destitute condition.
Nothing was said about paying on a debt, and when
the creditor offered to give a receipt the debtor refused
to accept it, something unusual if it was understood
that payment on a debt was being made, especially
one that was no longer enforcible. So that, if the
above analysis of the Wilden case is correct, it merely
meant to hold that before a creditor can apply a pay-
ment to a debt that is already barred and thereby re-

vive it, the evidence must show that the debtor recognized the barred indebtedness and by his act has revived it. Without stopping to inquire whether the criticism of the case of Beck v. Haas, 31 Mo. App. 180, by the Wilden case is well or ill-founded, since in the former one of the two debts was barred and the other not, nor to ascertain whether, if the Wilden case means more than what is above stated, it is in line with the other Missouri authorities, we think that, under the facts in the case before us, the evidence showed, not only a payment by the debtor, but also that he knew he was paying on a barred indebtedness with knowledge of the effect his payment would have thereon, and, inasmuch as all of the creditor's notes were barred, the debtor, by making a general payment on his barred indebtedness, left it to his creditor to say which particular note it should be credited upon.

Although the Wilden case was certified to the Supreme Court as being in conflict with the Beck case in the 31st Appeal, the latter tribunal .did not consider the case (178 Mo. 732). But, in a case between the same parties (Beck v. Haas, 111 Mo. l. c. 271), the Supreme Court says the rule in this State allows the creditor to appropriate the payment in the manner most to his own interest when the debtor himself waives the right, provided the application he makes does not operate inequitably to the debtor, and then remarks that "if these payments had resulted in reviving debts already barred its effect *might* have been different, *though it is difficult to see that any equities of the debtor are affected in either case.*" And so in this case, as all of deceased's indebtedness to appellant was barred and deceased knew this and yet wanted it paid and knew the effect of a partial payment, no equities of the debtor could be affected by appellant crediting the payment on any particular note more than another. Hence, in the absence of directions as to which barred note he should credit the pay-

ment, with, he had 'the right to credit the note sued on, and its enforcibility was thereby revived.

Many other cases are cited as being in opposition to the view we have taken, but a careful examination of most of them discloses that they are not applicable to the facts of this case, or are from other jurisdictions in which the statute requires more than a mere payment by the debtor to revive the whole debt.

In view of the above it follows that the judgment should be reversed and remanded with directions to enter judgment for the plaintiff for the amount due on said note with interest, and certify same to the probate court for allowance and classification against the estate of the decedent. So ordered. All concur.