Walter HUBBARD, Claimant-Respondent,

v.

ESTATE of Moritz HAPPEL, Deceased, Defendant-Appellant.

No. 31731.

St. Louis Court of Appeals.

Missouri.

Sept. 25, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 26, 1964.

Myrl B. Sternke, Palmyra, Rendlen & Rendlen, Branham Rendlen, Hannibal, for defendant-appellant.

J. Andy Zenge, Jr., Canton, for claimant-respondent.

DOERNER, Commissioner.

In lieu of the usual transcript, the parties to this appeal filed a statement of the case, which was approved by the trial court and certified as the transcript on appeal. Civil Rule 83.13, V.A.M.R. Since it is relatively short we quote it in its entirety:

"Moritz Happel died in Hannibal, Missouri on March 31, 1960 and his wife, Margaret L. Happel was appointed Executrix of his Last Will and Testament on April 25, 1960 by the Probate Court of Marion County, Missouri.

"Thereafter Claimant Walter Hubbard filed his demand in the Probate Court of Marion County, Missouri on August 15, 1960 against the estate of Moritz L. Happel in the sum of Six Thousand Five Hundred Dollars ($6,-500.00) on account of money alleged to have been loaned to decedent (sic). The Executrix of the estate of Moritz Happel waived the service of all notices but did not consent to the claim.

"On August 6, 1962 claimant, Walter Hubbard, made application to the Marion County Probate Court to transfer said claim to the Marion County Cir-

cuit Court which application was granted by said Probate Court on August 6, 1962.

"The Circuit Court of Marion County, Hon. Elgin T. Fuller, Judge, presiding, set the cause to be heard by jury in Palmyra, Missouri, on June 3, 1963. On June 3, 1963 the cause was called for trial and a jury of twelve good and lawful citizens of the County were duly sworn to try the issues and the cause proceeded to trial.

"Plaintiff's witness Herbert Richter on direct examination identified Plaintiff's Exhibit Number 1, a sale memorandum as being in the handwriting of Moritz Happel, deceased. The same witness identified Plaintiff's Exhibit Number 2, a check dated September 9, 1958, as being in the handwriting of Walter Hubbard and the endorsement on the reverse side as being the handwriting of Moritz Happel. The witness further identified Plaintiff's Exhibit Number 3, a check dated September 5, 1958, in the sum of Three Hundred Fifty Dollars ($350.00), as being written and endorsed by Plaintiff. The same witness identified Plaintiff's Exhibit Number 4, dated September 9th, 1958, a memorandum, as being written in the hand of Moritz Happel.

"Plaintiff's witness, Herbert Richter, on cross-examination identified Defendant's Exhibit Number A, a check dated February 1, 1959, as being written by Moritz Happel, deceased, and endorsed by Claimant, Walter Hubbard. The same witness identified Defendant's Exhibit B, a check in the sum of Three Hundred Dollars ($300.00) dated October 27, 1958 as being written and endorsed by the Plaintiff. Plaintiff's witness Herbert Richter further testified that the handwriting on Defendant's Exhibits F–1, F–2, G, and H was that of Moritz Happel, deceased.

"Immediately before Plaintiff rested he introduced Exhibits 1, 2, 3, and 4 which were ordered admitted by the Court and which were individually exhibited to the jury.

"Defendant's witness, Maurice L. Happel, son of decedent also identified Plaintiff's Exhibits 1, 2 and 4 and Defendant's Exhibits A, F–1, F–2, G and 4 exactly as did Plaintiff's witness Herbert Richter. Defendant's witness, Maurice L. Happel further testified that Exhibits F–1, F–2, G and H were business entries made by decedent in the usual course of business.

"Thereupon Defendant attempted to introduce Exhibits A, B, F–1, F–2, G and H into evidence, but the Court sustained Plaintiff's objection that said Exhibits were not sufficiently connected with the transaction brought out in Plaintiff's evidence as to be admissable. Defendant excepted then rested and the Court directed a verdict for the Plaintiff.

"Defendant duly filed a Motion to set aside verdict and Motion for a New Trial on June 8, 1963 which Motion was submitted thereafter to the Court on June 28, 1963. Thereafter Judge Fuller was stricken ill and no ruling was forthcoming from the Court until the ninety day period had expired. Defendant filed in the Circuit Court of Marion County, Missouri a Notice of Appeal on September 5, 1963.

"It is agreed between Plaintiff and Defendant that the question to be presented on this appeal is the admissibility into evidence of Defendant's Exhibits A, B, F–1, F–2, G and H in this cause. Said Exhibits are filed with the Clerk of this Court and photo-copies thereof are attached hereto. The same are made part of hereof by specific reference."

A further statement as to the exhibits is obviously necessary. Claimant's Exhibit 1 is a carbon copy of a sales memorandum on a printed form headed "Livestock Contract" and reads as follows:

"THIS CONTRACT made this 8th day of Sept. 1958 by and between Zalondek Bros of Kremlin, Okla. hereinafter known as SELLER, and M. L. Happel of Amarillo, Texas hereinafter known as BUYER, covers the sale of the following described livestock, for the consideration of the sum of   $(figures illegible)   part payment of purchase price, in hand paid to Seller by Buyer, and Seller hereby sells and agrees to deliver to said Buyer at prices listed:

| No. | Kind | Brands | Price |
| --- | --- | --- | --- |
| About 1,000 | Hereford & Angus Steers | Z right Hp | 24 $^{89}/_{100}$ |

Cattle are now located at ranch or farm known as Zalondek Bros and are to remain on the same feed, water and handling until the contract is consummated unless otherwise specified in writing and agreed to by both parties.

Cattle are now on: Grass  X  Feed Lot  __  Grass and Cake__ Silage __ Wheat Pasture___

Cattle to be weighed as follows: Cut__ % at Kremlin Okla

LEAVE _____ HOW _____ WEIGHED DRY AT _____

SHRINK  3%  %. Delivery to be made on or before stock yards or truck Buyer's option, F.O.B. Cars at: _____

All cattle to be sound and in merchantable condition and free of any contageous disease, Crippled, deformed, blind, one-eyed, locoed, lump-jawed, stage, bob tailed or otherwise deformed animals, may be rejected by the Buyer, Health and brand certificates to be furnished by the Seller.

All cattle are to be delivered free of all encumbrances and with a clear title.

REMARKS: Cattle to be taken in 3 days delivery days Sept 29 & 30 and Oct 1st.  Cattle to gathered between 6:30 and 7 a. m. trucked to Kremlin weighed and shrunk 3%.  Sellers agree to satisfy Dutch McConnel

| M. L. Happel | J. W. Zalondek |
| --- | --- |
| BUYER | SELLER  " |

Claimant's Exhibit 2 is a check for $350 dated September 5, 1958, signed Walter Hubbard, payable to M. L. Happel, endorsed on the back "M L Happel by Walter Hubbard" and bearing on its face the words "On cattle."  Claimant's Exhibit 3 is a check for $6150 dated September 9, 1958, signed Walter Hubbard, endorsed on the back "M. L. Happel," bearing on its face the words "On cattle."  Claimant's Exhibit 4 is written on the reverse side of a blank check and reads as follows:

"9-9-58

"This is to say I owe Walter Hubbard $6500 ½ down payment on Zolnedek Yrls. steers

M.L.Happel"

(The figure "6" in that of $6500 appears to have been written over the figure "7", as best we can decipher it with the aid of a magnifying glass)

The exhibits which were offered by the defendant Estate are as follows: Defendant's Exhibit A is a check for $21.79 dated February 1, 1959, signed M. L. Happel, endorsed on the back "Walter Hubbard," and bearing on its face the words "bal Due." Defendant's Exhibit B is a check for $300 dated October 27, 1958, signed "M. L. Happel by Walter Hubbard," and endorsed on the back "Walter Hubbard." Defendant's Exhibits F–1, F–2, G and H defy description, other than the fact that they are contained in what seems to be a sales book, and we therefore reproduce them:

HERB RICHTER

OFFICE PHONE 3-7221

RICHTER & HAPPEL

STOCKER AND FEEDER CATTLE
AMARILLO, TEXAS

HERB RICHTER                              M. L. HAPPEL

## RICHTER & HAPPEL

*Defs Ex 2-2*
*6-3-63*

OFFICE PHONE 3-7221      STOCKER AND FEEDER CATTLE
                        AMARILLO, TEXAS

Date _10-20_ 195_8_

Purchased from _Zaludek Bros_ Address _Kremlin, Okla_
Sold to _Mike Happel_ Address _Amarillo Tex_
Loaded _Kremlin Okla_ Shipped to _Greeley Texas_
Draft to_____

| Weight | No. | Kind. | Weight | No. | Kind | Weight | No. | Kind |
|---|---|---|---|---|---|---|---|---|
| 31cccf | 385 | | | | | | | |
| 303930 | 283 | | | | | | | |
| | 668 | | 303930 | | | | | |
| | | | | 2480 | | 197,512.08 | | |
| | | | 2421 8400 | | | 190,071.01 | | |
| | | | 1215720 | | | 7441.07 | | |
| | | | 6078 60 | | | | | |
| | | | 5374.64 00 | 0 | | | | |
| | | | | | 4 | 7441.05 | | |
| 72335.34 | | | | 4 | | 142440 Fut. | | |
| 303930 4 | | 70 | 4 | 3 | 200 | 66800 com | | |
| 53746 4 | | | 72303 4 | 3 | 8 | 9533.45 Loss | | |
| 75374 6 4 | | | | 3 | | 304850 goodng | | |
| | | | 8 | 929 5 | | 12.5819 5 Loss | | |
| | | | | | | 12.35643 Fut | | |

_6032840 Steers to K-6_
_5841845 Sale " "_
_1909.95 Loss_

_15000.05_
_7441.05_
_755890 - and Fut._

_932 steers Fut to_

_6180904_
_59317.22 to Hill_
_2491.82 Loss_
_3039.30 today_
_1909.95_
_7441.05 Fut_
_2 482.33 Loss_
_668 c to Wym_
_$10.3 9738 Loss_

HERB RICHTER

M. L. HAPPEL

# RICHTER & HAPPEL *Oys Ex y.*

OFFICE PHONE 3-7221

STOCKER AND FEEDER CATTLE
AMARILLO, TEXAS

6-3-63

Date _10-31_ 195_

Purchased from _Bryan Moore_ Address _C. Groorey Keys_
Sold to _Hubbard & Co_ Address _Okla City Okla_
Loaded _____ Shipped to _____
Draft to _____

| Weight | No. | Kind | Weight | No. | Kind | Weight | No. | Kind |
|--------|-----|------|--------|-----|------|--------|-----|------|
| 5980 | 6 | | | | | | | |
| 6760 | 7 | | | | | | | 92 |
| 5610 | 6 | | | 1 | | 53728 | | |
| 5840 | 6 | | 7458 95 | 44 | | 52 | 2 | |
| 3750 | 4 | | 3547 | 3 58 | | | | |
| 5770 | 6 | | 11022 3 | | | | 1 52 | |
| 4750 | 5 | | | | | | 116 | 36 8 |
| 5840 | 6 | | | | | | | |
| 6490 | 7 | | | | | | | |
| 4600 | 5 | | | | | | | |
| 55390 | 58 | | | 1352320 | | | | |
| | | | | 132976 8 cost | | | | |
| | | | | 226.52 gain | | | | |

55390
1662
53728
2475
268640
376096
214912
107456
13297.6800

55390
3
166170

13297.68
9
12.39768
11006 39
13966.29

**HERB RICHTER**

**M. L. HAPPEL**

# RICHTER & HAPPEL

OFFICE PHONE 3-7221

STOCKER AND FEEDER CATTLE
AMARILLO, TEXAS

Def's Ex N
6-3-63

Date 10-29 1958

Purchased from _Jaboudek Bros_ Address _Kremlin, Okla_

Sold to _M. L. Happel_ Address _Amarillo Tex_

Loaded _____ Shipped to _____

Draft to _Fred Hill_ _Amarillo Tex_

| Weight | No. | Kind | Weight | No. | Kind | Weight | No. | Kind |
|--------|-----|------|--------|-----|------|--------|-----|------|
| 258270 | 285 | | | | | | | |
| 1330 | 2 | | | | | | | |
| 256940 | 283 | | | | | | | |
| 770826 | | | | | | | | |

---

■ The initial point in defendant's brief is that the court erred in excluding defendant's Exhibits A and B because " * * * such cancelled checks are presumptive evidence that the amounts were paid to Plaintiff on account of the debt shown to have existed, and such checks cannot be excluded on the grounds that they belong to a different transaction until the presumption is overcome by proof." We cannot accept that proposition in its entirety. A cancelled check endorsed by the payee and paid by the drawer's bank may raise a presumption that payment of the amount specified therein was received by the payee; but whether it raises the further presumption that the payment was made on the particular obligation sued on depends upon the state of the record. If the evidence shows that there existed only the mat-

ter in suit, and that there were no other transactions between the parties, a presumption will arise that the payment was made on the obligation which is the subject of the suit. Caneer v. Kent, 342 Mo. 878, 119 S.W.2d 214; Jesse v. Davis, 34 Mo. App. 351. For as pointed out in Caneer v. Kent, supra, and Miller v. Miller, 169 Mo.App. 432, 155 S.W. 76, under such circumstances the court would otherwise have to presume that the payment was made as a gift, which it cannot do. But if the evidence shows the existence of other obligations in addition to the one sued on, or that the relationship of the parties was such that there were other transactions between them, then (nothing more appearing) no presumption arises that the payment made by the check was on the matter in suit. And under such circumstances, in order to have the check admitted into evidence, the burden would be on the defendant to show that the cancelled check represented a payment made on the obligation sued on. That was the situation in Poland v. Fisher's Estate, Mo., 329 S.W. 2d 768, where plaintiff filed a claim for $11,287.53, the aggregate amount due on various loans made to the deceased during his lifetime. The evidence showed that the deceased (as here) had been a dealer in livestock, purchasing and selling the stock through the facilities of a stockyard and a brokerage firm owned by plaintiff. The evidence further showed that the income to the plaintiff from the deceased for caring for the latter's stock on a per diem basis, and for commissions on sales, amounted to about $3,000 per month. During the trial the defendant estate offered sixteen cancelled checks of the deceased, payable to the plaintiff, four of which were excluded for the reason that no showing had been made that they pertained to any item involved in the case. In upholding this ruling of the trial court on appeal the Supreme Court said (329 S.W.2d 770):

" * * * The checks themselves did not indicate that the amounts stated thereon were in payment on any items claimed to be due from Fisher to plaintiff. There was no evidence either oral or otherwise from which a finding could be made that the checks were involved in any transaction making up the amount due from the estate. * * * We rule the trial court committed no error in rejecting the exhibits as evidence of any payment made by Fisher to Poland for any of the items sued on in this case."

And see Trumbo v. Flournoy, 77 Mo.App. 324, Bass v. Daetwyler, Mo.App., 305 S.W. 2d 339. The fundamental reason for the rule is that payment is an affirmative defense, and the burden of proving it is on the defendant. Emory v. Emory, Mo., 53 S.W.2d 908; Machtinger v. Grenzebach, Mo.App., 282 S.W.2d 200; Allmon v. Allmon, Mo.App., 306 S.W.2d 651.

■ From the meager information contained in the statement of facts and the exhibits attached thereto, unsupplemented by any explanation in the defendant's brief, we gather that claimant made a loan of $6500 to the deceased. Presumably this loan had some unexplained connection with what appears to have been the deceased's purchase of steers from Zalondek Bros. Defendant seems to concede that claimant's evidence was sufficient proof to establish the loan, for in its brief, after referring to claimant's Exhibits 1, 2, 3, and 4 it states, " * * * Thus the Respondent proved his alleged debt by cancelled checks between the parties. * * *" We might add that the deceased's indebtedness to claimant was also substantiated by the memorandum of indebtedness executed by the deceased. Defendant's defense, as stated in its brief, was that: "The defense to the plaintiff's claim was that the claim had been satisfied in full by payment, or by other credits, or both." "Other credits" would indicate that there were other transactions between the claimant and the deceased. Defendant does not so state, but presumably it sought to establish such credits from other transactions by Exhibits F-1, F-2, G and H. But without

any explanatory testimony those exhibits on their face did not show any connection with claimant, or with the loan sued on. Exhibit F-1 was on the back of Exhibit H. Exhibit H, as well as Exhibit F-2, appears to be a record of the firm of Richter & Happel relating to purchases made from Zalondek Bros. and sold to M. L. Happel. Neither of these three exhibits contains the name of or makes any reference to claimant. Exhibit G appears to be a memorandum covering the purchase by Richter & Happel of fifty-eight unspecified units, and their sale to Hubbard & Co. There is nothing in the statement of facts which identifies claimant with that firm, but even if we assume that Hubbard & Co. is the name under which claimant does business, there is nothing on the face of the exhibit which would indicate that it had any connection with the loan sued on. All that the exhibit does is to confirm the defendant's statement in its brief that there were other transactions between the claimant and the deceased. We rule that under those circumstances the trial court did not err in excluding defendant's Exhibits A and B. Poland v. Fisher's Estate, supra; Trumbo v. Flournoy, supra.

Defendant's second and third points may be considered together. Defendant cites Section 473.380, RSMo 1959, V.A.M.S., which provides in part that no claim shall be allowed against an estate unless it is accompanied by an affidavit of the claimant stating that to the best of his knowledge and belief he has given credit to the estate for all payments and offsets to which it is entitled and that the balance claimed is justly due. Defendant concedes that plaintiff's claim was accompanied by a proper affidavit. But it contends that under the statute it was incumbent upon the claimant to introduce evidence to the effect that no payments had been made on the loan by defendant; and that having failed to do so " * * * defendant's motion for a directed verdict made at the close of plaintiff's case" should have been sustained. In the first place, the foregoing statement of facts does not show that the defendant filed a motion

for a directed verdict at either the close of claimant's case, or at the close of all of the evidence. But more importantly, defendant's contention is not the law. Of course, if a claimant concedes that payments were made on the subject of the claim, he must show such credits in his claim. Knecht v. United States Savings Institution, 2 Mo. App. 563. But if a claimant does not so concede, the burden is on the estate to prove payment, not on claimant to prove nonpayment. Courtney's Estate v. Lanznar's Estate, Mo.App., 296 S.W. 269; Rhoades v. Robinson's Estate, 222 Mo.App. 912, 6 S.W. 2d 1007; Ledbetter v. Allen's Estate, Mo. App., 183 S.W.2d 846. It is only necessary for a plaintiff to plead and prove non-payment where the fact of non-payment is a necessary element of his cause of action. State ex rel Spaulding v. Peterson, 142 Mo. 526, 39 S.W. 453, adopted en banc 142 Mo. 526, 40 S.W. 1094; Mozingo v. Mozingo, Mo.App., 149 S.W.2d 897. Since claimant's claim was based on an indebtedness, that rule was not applicable here. Poland v. Fisher's Estate, supra; Courtney's Estate v. Lanznar's Estate, supra; Rhoades v. Robinson's Estate, supra.

The defendant's final point is that if defendant's contentions as to payments were sustained, then claimant's affidavit was fraudulent, and vitiated the claim. We need not consider whether the failure to give a credit would necessarily prove fraud. The short answer is that defendant did not sustain its defense of payment.

For the reasons stated it is the recommendation of the Commissioner that the judgment should be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is affirmed.

RUDDY, P. J., WOLFE, J., and JAMES D. CLEMENS, Special Judge, concur.