426 F.Supp. 986 (1977)
GENERAL ELECTRIC COMPANY, a corporation, Plaintiff,
v.
CONSTRUCTION ASSOCIATES, INC., et al., Defendants.
No. 75-1174C(3).
United States District Court, E. D. Missouri, E. D.
January 28, 1977.
*987 James D. Eckhoff, Fordyce & Mayne, St. Louis, Mo., for plaintiff.
Marvin Klamen, Klamen, Summers & Compton, Clayton, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
General Electric Company (G. E.) brought this action to collect on two promissory notes. Defendants have raised the defense of failure of consideration as to both notes and have alleged payment of one note. The case is before the Court upon an entirely stipulated record. It is clear that the Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332.
Defendant Construction Associates, Inc. is a construction contractor. The individual defendants are officers of the corporation and their spouses. For many years prior to this suit, G. E. sold electrical appliances to Construction Associates, Inc. The appliances were installed in various apartment projects and "open accounts" were maintained for each project. Two of these projects in the St. Louis area were the "Mansion Hill" and "Old Ballas Village" apartments. The open account in the "Mansion Hill" project became delinquent some time in the Fall of 1974. On November 1, 1974, in response to threats from G. E. to file a mechanic's lien on the project and cease all other deliveries to Construction Associates, Inc. projects, a note in the amount of Eighteen Thousand Fifty Six Dollars and Fifty-Five Cents ($18,056.55) was delivered by the defendants to G. E. A similar problem occurred in the latter part of the Summer of 1975 with the "Old Ballas Village" account. A note in the amount of Twenty Five Thousand Seven Hundred Thirty-Two Dollars and Thirteen Cents ($25,732.13) was delivered on September 15, 1975. The individual defendants co-signed both notes at the request of G. E.
There is no question as to the existence of the debts underlying the two notes. Nor is there any dispute about the authenticity of defendants' signatures on the notes, or that they were delivered to plaintiff. Also, the execution of the notes by the individual defendants on behalf of Construction Associates, Inc. was an authorized and legitimate corporate act.
After the execution and delivery of the notes, G. E. continued to furnish equipment to Construction Associates, Inc. projects. No mechanic's liens were filed. After the notes were delivered, G. E. did not credit the Construction Associates, Inc. "open accounts" but continued to show those amounts as due. After each note was delivered, at least one bill was actually sent to *988 Construction Associates, Inc. reflecting those accounts to which defendants made no objections.
Defendants assert that neither note is supported by consideration. Both notes provided in part that:
To induce the said General Electric Company to extend further credit and to forebear the immediate collection of the debt now due and owing, the said [defendants] . . . have agreed to reduce the open account above mentioned by the execution of this promissory note.
Defendants' argument that there is a failure of consideration is based upon two assumptions. First, defendants construe the above language to mean that G. E.'s only duty under the notes was to reduce Construction Associates, Inc.'s "open accounts" by the amount of the notes. Second, defendants argue that G. E.'s failure to extinguish the pre-existing debts prevents them from enforcing the notes. After analysis, the Court rejects both of these assumptions.
As to defendants' first assumption, it is clear that the language of the note imposed a duty upon G. E. to extend further credit to Construction Associates, Inc. Although it is true that the extent of this obligation is somewhat ambiguous, it clearly was bargained for and received by Construction Associates, Inc. The same is true with regard to G. E.'s obligation to refrain from collecting the debt immediately. Finally, it is not clear that the language of the notes required G. E. to reduce the "open accounts" or was merely referring to the circumstances of their execution.[1]
The clear language of the Uniform Commercial Code requires the rejection of defendants' second assumption. Section 400.3-408 RSMo 1969 provides in part:
That no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind.
No circumstances compel the application of a different rule here.[2]
Thus, the Court concludes that the notes were supported by consideration.
Defendants assert that they have paid the "Mansion Hill" note, the subject of Count II of plaintiff's complaint. On December 11, 1974, defendants presented a "voucher" to G. E. in the amount of the debt. The voucher was in the form of a draft drawn by Construction Associates, Inc. upon the surety of a Kansas City, Missouri, project. The draft by its terms stated that it was payable to G. E. and was: "payment due for work on kitchen appliances on property located at `Stonehaven South'" (the Kansas City project).
Plaintiff refused this tender and returned the voucher on December 23, 1974. Plaintiff gave its reasons for refusal by letter accompanying the voucher:
The voucher indicates that it applies to property located at Stonehaven South Apartments and our acceptance by endorsement certifies that we have delivered *989 material to those premises. Of course, this is not true . . .
Subsequent communications revealed that G. E. had furnished materials to the "Stonehaven South" project and had not yet been paid.
On January 9, 1975, defendants Bill Bruce and Donald Ham met with G. E. representatives concerning payment of the note. As a result of that meeting, G. E. accepted the voucher on January 10, 1975. Defendants did not ask G. E. to return the Mansion Hill note upon acceptance of the voucher. It is clear that G. E. treated the voucher as a conditional payment from the time of its receipt.[3]
In March of 1976, it became apparent that there would be insufficient funds to pay the Stonehaven South debts. After initially filing a materialmen's lien for over forty six thousand dollars ($46,000), G. E. credited the Kansas City project by the amount of the voucher and reduced the lien accordingly. Count II, covering the Mansion Hill note, was then added to this action.
Defendants urged that the voucher was tendered and accepted as unconditional payment. They argue that G. E. was aware that it would waive certain lien rights in the Kansas City project and took that risk. General Electric asserts that defendants Bruce and Ham represented at the January 9, 1975 meeting that "excess" funds were available for the Kansas City project. Plaintiff argues that its acceptance of the voucher as payment of the Mansion Hill note was conditional upon those excess funds becoming available.[4]
The burden of proving payment of a note rests with the party asserting it. Johnson v. Johnson, 352 Mo. 787, 179 S.W.2d 605 (1944); Miller v. Gayman, 482 S.W.2d 414 (Mo.1972). The Missouri courts require a showing of clear and convincing evidence of payment. Security Trust Company v. Sherwood Homes, Inc., 436 S.W.2d 776 (Mo.Ct.App.1968). In this case the defendants have the burden of proving payment. A presumption of payment of a note is ordinarily raised by a showing that the payee received a check or other instrument from a maker and that the check was honored. Hubbard v. Happel's Estate, 382 S.W.2d 416 (Mo.Ct.App.1968). In this case it has been stipulated that the voucher was honored and that it was meant to apply, either conditionally or absolutely, to the Mansion Hill note.
Under the circumstances of this case, however, the Court cannot conclude that defendants have raised a presumption of payment. First, the purpose of the payment as shown by the voucher was ambiguous. It indicated that payment was being made from materials furnished to a Kansas City project. It is only by going beyond the terms of the voucher that an intent to pay the Mansion Hill note can be found. Cf. Hubbard, supra. Second, defendants never demanded that G. E. return the note. Assuming the payment was not conditional, defendants had the right to have the note returned and cancelled when the voucher was paid in February of 1975. Although defendants are entitled to raise the defense of payment when the note is still in the hands of the payee, Household Finance Company, Inc. v. Watson, 522 S.W.2d 111 *990 (Mo.Ct.App.1975), normal business practice would be to request its return.
When the voucher was tendered to G. E. in January of 1975, some kind of payment agreement was reached. Whether it was an absolute payment or conditional payment can only be determined from the intent of the parties at that time. See Blesse v. Blackburn, 31 Mo.App. 264 (1888). In the absence of further stipulations or evidence, the Court can only conclude that defendants have not met their burden of proving payment.[5]
The principal amount of the two notes totals Forty Three Thousand Seven Hundred Eighty-Eight Dollars and Sixty-Nine Cents ($43,788.69). The interest due on the notes at this time is Three Thousand Eight Hundred Sixty-Three Dollars and Fifty-Five Cents ($3,863.55). Finally, the notes provided for a fifteen per cent (15%) collection fee, which would total Six Thousand Five Hundred Sixty-Eight Dollars and Thirty Cents ($6,568.30). These figures total Fifty-Four Thousand Two Hundred Twenty Dollars and Fifty-Four Cents ($54,220.54). Accordingly, judgment will be entered for plaintiff in that amount.
NOTES
[1] Regardless, see § 400.3-408, RSMo 1969, which provides that a partial failure of consideration is merely a defense pro tanto.
[2] Defendants' argument to the contrary requires a sophisticated reading of the Uniform Commercial Code (Chapter 400, RSMo 1969). Section 3-802(1) provides in part that:

Unless otherwise agreed where an instrument is taken for an underlying obligation . . .
* * * * * *
(b) . . . the obligation is suspended [but is not extinguished] pro tanto until the instrument is due . . ..
Defendants argue that when a payee "otherwise agrees" that a note will extinguish a preexisting debt, that part of the bargain must be performed before the note will be enforced by the courts. This would imply an exception to 3-408 and its seemingly unambiguous statement that "no consideration is necessary for an instrument . . . given in payment of . . . an antecedent obligation."
Defendants argue that such an exception is necessary to give the "otherwise agreed" language of 3-802 some meaning. However, if plaintiff had agreed to extinguish the debt, the language would have meaning. Plaintiff would be barred from suing on the account, regardless of its treatment of the debt in its books.
[3] Although defendants object to the relevancy of evidence of G. E.'s conduct after the January 9th meeting, their actual conduct is not disputed. Various business records indicate that G. E. intended to condition the application of the voucher to the Mansion Hill account upon the ultimate ability of Construction Associates, Inc. to pay all of its debts from the Stonehaven South project. However, the Court tends to agree with defendants that such evidence is of limited relevancy in determining the agreement between the parties when the voucher was tendered and accepted.
[4] Defendants argue that a debtor may require a creditor to apply a payment to a specific debt if several exist. The Court agrees that under the circumstances G. E. had no special right to control the application of the payment. The payment was applied to the Mansion Hill note, however. The question is whether the parties by agreement made that application conditional. Cf. Silver v. Johnson, 362 S.W.2d 757 (Mo. Ct.App.1962).
[5] Plaintiff was not satisfied with the stipulation and desired to offer evidence before submitting this case to the Court. Defendants, however, made no such offer.