**In the Matter of Christina Ruth JOHNSON, Debtor.**

**Christina Ruth JOHNSON, Plaintiff,**

**v.**

**CITIZENS' DISCOUNT LOAN AND SAVINGS COMPANY, Defendant.**

**Bankruptcy No. 81–00438–3.**
**Adv. No. 81–0702–3.**

United States Bankruptcy Court,
W. D. Missouri, W. D.

Aug. 12, 1981.

John E. Chick, Jr., Kansas City, Mo., for plaintiff.

Marsha Duncan, Kansas City, Mo., for defendant.

## FINAL JUDGMENT GRANTING LIEN AVOIDANCE AS PRAYED IN THE COMPLAINT

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff filed a complaint seeking to avoid the defendant's security interest in certain personal property pursuant to the provisions of § 522(f) of the Bankruptcy Code. That section pertinently provides that a debtor may avoid the fixing of a lien on the debtor's household furnishings "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a nonpossessory, nonpurchase-money security interest . . . ."

In its answer, the defendant contended that it had a purchase money security interest in the goods in question. However, the defendant failed to provide the court with any documentary evidence in support of its position. For that reason, the court entered an order directing the defendant to produce documents in support of its contention that it had a purchase money security interest in the furniture.

The defendant timely complied with that order and provided the court with photocopies of documents which *purported* to show that it did, in fact, have a purchase money security interest in the consumer goods in question as of *October 30, 1979,* the date it *appeared* the defendant had advanced the plaintiff the money to purchase the consumer goods in question. (However, the *uncontradicted contentions* of the plaintiff, as will be discussed later, now are to the effect that she had purchased the furniture in *October of 1978* and that the proceeds of the *October 30, 1979,* loan were used to pay off that antecedent indebtedness to the seller. As such, there is no question that the defendant would have a nonpurchase-money security interest in the furniture which would be subject to § 522(f) lien avoidance. "When a purchase money security interest is claimed by a secured party who is not a seller, he must of course have given present consideration." Uniform Commercial Code Comment No. 2 for § 400.9–107, RSMo. In addition, that comment states that § 400.9–107 *"excludes from the purchase money category any security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt." Id.* (Emphasis added.) To avoid further litigation and to avoid the further prodigalization of the court's time, however, the court also will address the issue as though a purchase money security interest had, in fact, arisen on October 30, 1979.) However, the documents which the defendant submitted to the court in response to the court's order to produce documents also showed that on November 10, 1980, the defendant refinanced the debtor's October 30, 1979, loan and took as collateral the goods here in question. Because the only issue before the court *appeared* to be the legal issue of whether the defendant had lost its status as a purchase money party when it refinanced the earlier loan transaction, the court did not set this action for hearing. Rather, it directed the parties to file legal briefs on that issue.

The defendant filed a three part brief. The first part summarized the facts to the following effect:

1. On August 25, 1979, the plaintiff executed an open end credit agreement with the defendant. It was an unsecured transaction with a $1,000.00 credit limit. The defendant disbursed the sum of $1,029.77 to the plaintiff under the terms of that agreement on or about August 25, 1979.

2. On or about October 30, 1979, the plaintiff executed a note and loan statement which *appeared* to constitute a purchase money transaction.

3. On November 10, 1980, the plaintiff executed another note and loan statement. The proceeds from that loan were used to pay off the August 25, 1979, and the October 30, 1979, loans. A new security agreement was executed on that date.

The second part of the defendant's brief dealt with the issue of whether the property in question is even the proper subject matter of § 522(f) lien avoidance. The

defendant contended that several of the pieces of furniture are worth in excess of the $200.00 exemption allowed by § 522(d)(3) of the Bankruptcy Code. It states as follows in this regard:

"The property claimed as exempt under this Section far exceeds $200.00 in value per particular item. The property Plaintiff claims exempt pursuant to this section is, specifically, a dining room set consisting of one table, six chairs, and two side pieces; a sofa and loveseat in a matching set, a cocktail table, end table and lamp. Particularly, the dining room set is one item, of a value far exceeding $200.00. Additionally, the living room furniture grouping is one item, that one item consisting of the matching sofa and loveseat, also of a value far exceeding $200.00."

The issue of whether the furniture must be treated as a "living room set" and as a "dining room" set for purposes of applying § 522(d)(3) of the Bankruptcy Code is moot because the plaintiff has adequate exemptions available to her under § 522(d)(5) of the Bankruptcy Code to cover the "sets" of furniture. Section 522(d)(5) of the Bankruptcy Code provides that "[t]he debtor's aggregate interest, not to exceed in value *$400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property*" may be exempted. (Emphasis added.) In turn, paragraph (1) of that subsection allows the debtor to exempt up to $7,500.00 in value of his residence. Three Collier on Bankruptcy ¶ 522.14 at 522–43 (15th ed. 1980) states that:

"The debtor is allowed an exemption of $400 plus the unused portion of the homestead exemption. The purpose of this exemption is to prevent discrimination against nonhomeowners ... *The unused portion of the homestead exemption plus the $400 may be claimed in any property, be it property that is exempt in excess of the value allowed by a particular paragraph of section 522(d), or property that is otherwise nonexempt.* (Emphasis added.)

The United States Court of Appeals for the Seventh Circuit recently upheld this interpretation of § 522(d)(5) of the Bankruptcy Code. See *In the Matter of Smith*, 640 F.2d 888 (7th Cir. 1981). That court reasoned as follows:

"Congress found that 'there is a Federal interest in seeing that a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start.' The general exemption was intended to ensure that there was no discrimination between homeowners and non-homeowners in achieving that goal. *By permitting non-homeowners (or homeowners with property valued under $7,500) to exempt the unused portion of the homestead exemption, plus $400, Congress in effect gave all debtors potentially the same $7,900 stake* ... Exemption statutes are to be construed liberally. In view of Congress' goal of providing a meaningful fresh start for debtors, it makes no sense to limit the type of property that may be applied to the general exemption without a clear statement of Congressional intent to do so." *Id.* at 891. (Emphasis added.)

Thus, taking into account only the exemptions allowed by § 522(d)(5) of the Bankruptcy Code, the plaintiff would be entitled to exempt $7,900.00 worth of property. According to the files and records in this case, it appears that the plaintiff has claimed $15.00 of property as exempt under § 522(d)(5). That would leave her with $7,885.00 worth of exemptions under that section. (The plaintiff also had scheduled her 1980 state and federal income tax refunds as exempt, apparently under § 522(d)(5). However, the amount of those refunds was not listed because she had not yet filed her returns. There is nothing in the files and records to indicate that the combination of the $15.00, the income tax refunds, and the fair market value of the furniture would exceed $7,900.00.)

■ The defendant also addressed in its abovementioned brief the issue of whether its "purchase money security interest" in the furniture had been lost when it refi-

nanced the loan on November 10, 1980. It pertinently stated that:

"At the time of the 1979 loan, and again at the time of the 1980 loan, Defendant properly filed its financing statement pursuant to Uniform Commercial Code 9–302(1)(d). *Defendant contends the collateral in which it obtained a purchase money security interest in 1979 at the time of the purchase of the collateral secured only its purchase price and that same collateral continued to secure only its purchase price at the time of [the] 1980 loan.* As set forth in the facts under I above, the monies disbursed by Defendant for the purchase of the household furnishings is clearly identifiable in the second loan made to Plaintiff in 1980 and not even the pro-ration of funds as sometimes followed by Courts and commentators regarding Section 9–107 of the Uniform Commercial Code is necessary." (Emphasis added.) (As mentioned earlier, the plaintiff's uncontradicted contentions now are that the furniture was purchased in 1978 and that the proceeds of the October 30, 1979, loan were used to pay off the antecedent debt generated by that 1978 purchase.)

In further support of its contention that it retained a purchase money security interest, the defendant stated, as quoted above, that "[a]t the time of the 1979 loan, and again at the time of the 1980 loan, Defendant properly filed its financing statement pursuant to Uniform Commercial Code 9–302(1)(d)." That section provides that "[a] financing statement must be filed to perfect all security interests except . . . a purchase money security interest in consumer goods; . . . ." Accordingly, the defendant's filing of the financing statement does not demonstrate the existence of a purchase money security interest. Rather, it only shows the existence of a perfected security interest of some type.

The plaintiff responded to the defendant's brief by filing a brief of her own. As noted above, she stated that she had purchased the furniture from Brown's Furniture Store in *October of 1978* and that "[d]uring October, 1979, almost one year

later, the Plaintiff borrowed money from the Defendant to pay the remaining balance directly to BROWN'S FURNITURE, which was holding the original note, and not assigned to the Defendant, in the amount of ONE THOUSAND SIX HUNDRED FORTY–FIVE DOLLARS ($1,645.00) . . . ." Thus, as noted above, the uncontradicted allegation of the plaintiff now is that the defendant never had a purchase money security interest in the furniture because it had never given present value to the plaintiff which had enabled her "to acquire rights in or the use of collateral . . . ." § 400.9–107(b), RSMo. That allegation is further supported by the defendant's conduct in perfecting its security interest by filing rather than by relying upon the automatic perfection for purchase money security interests in consumer goods permitted by § 400.9–302(1)(d). However, as noted above, in order to dispose of this controversy without the need for further judicial action, the court will also address the issue as though the defendant did, in fact, have a purchase money security interest on October 30, 1979.

"[I]t does not necessarily follow that once a purchase money security interest always a purchase money security interest." *In re Jackson*, 9 UCC Reporting Service 1152, 1156 (W.D.Mo.1971). In *Matter of Jones*, 5 B.R. 655, 656 (M.D.N.C.Bkrtcy.1980), under circumstances materially similar to those at bar, it was held that:

"The purchase money character of the original lien was destroyed by . . . the refinancing of the note. The Uniform Commercial Code defines a security interest as purchase money, 'to the extent that it is . . . (b) taken by a person who by making advances or incurring an obligation gives value to enable the Debtor to acquire rights in or the use of collateral if such value is in fact so used'. U.C.C. § 9–107 . . . . [T]he refinancing of the original Note [did not] enable the Debtor to acquire additional rights in the collateral."

That court also held that because the "purpose of the renewal note was to payoff [sic]

the original note, an antecedent debt[,] [t]he purchase money character of the security interest was extinguished when the proceeds from the first renewal note were used to satisfy the original note." *Id.* at 657. See Official Comment No. 2 for § 400.9–107, RSMo., *supra.* "The renewal note which was accepted by the lender in the refinancing of the original note was accepted in satisfaction of an antecedent debt. Therefore, the security interest held under the renewal note is [a] nonpurchase money security interest and is avoidable under 11 U.S.C. § 522(f)." *Matter of Jones, supra*, at 657.

The Missouri courts have held that "the acceptance of a note does not constitute payment of a . . . preexisting debt unless there is an . . . agreement to that effect between the parties to the transaction," but they have "recognized that the agreement of the parties need not be express or in writing, but that the circumstances and conduct of the parties might show acceptance of a note, . . . as payment of a debt." *Security Trust Co. v. Sherwood Homes, Inc.*, 436 S.W.2d 776, 779 (Mo.App. 1968). The circumstances and the conduct of the parties in the case at bar demonstrate that the note executed on November 10, 1980, was in satisfaction of the two preexisting debts. The defendant has provided the court with documents which show that the ledger card on the August 25, 1979, loan was zeroed out on November 13, 1980, and there is not any indication that the same treatment was not given to the October 30, 1979, loan. Moreover, the new note executed by the plaintiff on November 10, 1980, shows that a disbursement of $2,943.73 was made to the two preexisting loans. Furthermore, the defendant stated in its brief that the disbursements made under the November 10, 1980, loan

"included payments to the loan numbers 23821 (the October 30, 1979[,] loan to plaintiff) and R671 (the August 25, 1979, Quick Cash Account). . . . The total balance of the Quick Cash Account which was rewritten into the November 10, 1980[,] loan, was $1,089.97, leaving a balance of $1,853.76 from the November 10,

1980, disbursement which was made toward the October 30, 1979[,] loan."

In addition, the parties executed a new security agreement on November 10, 1980, which covered the collateral here in issue and which, contrary to the defendant's protestations otherwise, secured more than the "purchase price" of the collateral. (As previously quoted, the defendant stated in its brief that "the collateral in which it obtained a purchase money security interest in 1979 at the time of the purchase of the collateral secured only its purchase price and *that same collateral continued to secure only its purchase price at the time of [the] 1980 loan.*" (Emphasis added.)) The November 10, 1980, security agreement clearly shows the amount financed as *$3,258.35*; clearly shows the collateral securing that total amount as a "9 pc. dining room suite table w/6 chairs; sofa, love seat, cocktail table; 1 end table; 1 lamp"; and clearly makes no divarication between the proceeds used to pay off the August 25, 1979, loan and the proceeds used to pay off the October 30, 1979, loan.

Thus, it appears from the circumstances, from the conduct of the parties, and from the defendant's own statements that the November 10, 1980, loan transaction satisfied both of the preexisting debts. See *General Electric Company v. Construction Associates, Inc.*, 426 F.Supp. 986, 989 (E.D. Mo.1977). (Although the Missouri courts "require a showing of clear and convincing evidence of payment, . . . [a] presumption of payment of a note is ordinarily raised by a showing that the payee received a . . . [note] from a maker and that [the note] was honored.") Therefore, because the defendant could not have had a purchase money security interest after November 10, 1980, *if at all*, it is hereby

ADJUDGED that the plaintiff's complaint to avoid the defendant's security interest in her furniture pursuant to the provisions of § 522(f) of the Bankruptcy Code be, and it is hereby, granted.