B. C. CANEER, Appellant, v. T. B. KENT and SENTER COMMISSION COMPANY, a Corporation.—119 S. W. (2d) 214.

Division Two, August 17, 1938.

*L. R. Jones* and *McKay & McKay* for appellant.

*Henry C. Walker* for respondents.

TIPTON, J.—Appellant filed her petition in the Circuit Court of Dunklin County, Missouri, and by her action she sought to enjoin the foreclosure of a parcel of real estate situated in that county and to cancel a note and a deed of trust on same. On a change of venue, the cause was sent to the Circuit Court of Butler County, and that court rendered a judgment in favor of respondents.

Appellant became the purchaser of all the assets of the Caneer Store Company in July, 1927, at a bankruptcy sale.

On June 7, 1915, the Caneer Store Company executed its promissory note for $18,000, due January 15, 1916, secured by a deed of trust on real estate located in Senath, Missouri, and payable to the Senter Commission Company of St. Louis, Missouri, respondent. T. B. Kent is the trustee named in the deed of trust.

The Caneer Store Company was organized as a corporation September 19, 1904, and was engaged in the retail mercantile business in Senath, Missouri. It bought cotton in that locality and shipped it to the Senter Commission Company in St. Louis and they sold it. The Senter Commission Company made advancements to the Caneer Company in various amounts at different times. The note in question was given to take up the indebtedness which the Caneer Company owed respondent, which amounted to approximately $9000, leaving the balance in respondent's hands. Later, drafts were honored by respondent in various amounts, and at one time the Caneer Company owed it an open account of nearly $48,000. This was eventually paid by the sale of cotton, and on February 2, 1920, there was a balance due the Caneer Company of $5864.97, which was on that date credited on the $18,000 note. The foreclosure was started on November 14, 1930.

It is admitted that appellant stands in the same position as the Caneer Company. Other pertinent facts will be stated in the course of this opinion.

I. First, it is the contention of appellant that the note was fully paid by overcharges on interest and insurance which respondent charged the Caneer Company, and also by the failure of respondent to get the Caneer Company proper credits for freight rebates from April 27, 1905, to February 2, 1920. We are convinced that the substantial evidence in this case fails to sustain appellant in this contention, but because of the view we take of this case, it will not be necessary to discuss this evidence because the note was given in payment of all indebtedness prior to June 7, 1915. If appellant were correct in her contention in regard to the overcharges of interest and insurance premiums subsequent to that date, the amount would not be sufficient to pay the note. The giving of the note made an account stated between the parties for indebtedness prior to that date.

" 'When parties, having mutual matters of account between them, growing out of a contract, deliberately account together and state a balance, and the party who, on such accounting, is found indebted to the other pays the debt or gives a written obligation for its payment this settlement is so far conclusive between the parties that it cannot be reopened or gone into, either at law or in equity, except upon clear proof of fraud, or mistake, or of an express understanding that certain matters were left open for future adjustment.' [Pickel v. St. Louis Chamber of Commerce Assn., 10 Mo. App. 1. c. 194. See, also, Knox v. Whalley, 1 Esp. 159; Bull v. Harris, 31 Ill. 489; Lee v. Reed, 4 Dana, 111; Hodges v. Hosford, 17 Vt. 615; Darlington v. Taylor, 3 Grant's Cases, 195; Martin v. Beckwith, 4 Wis. 220; Gibson v. Hanna, 12 Mo. 165; Cogswell v. Whittlesey, 1 Root, 384; Sergeant v. Ewing, 36 Pa. St. 156; Nicholson & Co. v. Pelanne Bros., 14 La. Ann. 508.]'' [McCormick v. Transit Ry. Co., 154 Mo. 191, 1. c. 201.]

As the above authority shows, this account stated cannot be set aside except for fraud or mistake. Appellant does not attempt to set it aside on either ground, but, on the contrary, ratifies the settlement by trying to prove payment of the note. Moreover, if the issue of fraud were before us in setting aside this account stated, the evidence would not be sufficient to sustain appellant's contentions.

In regard to the rebates of freight charges, W. T. Caneer, vice president and general manager of the Caneer Company testified that he knew of the practice in such regard in the year 1913. A. A. Caneer, in regard to the overcharges on interest, testified that "I figured the account at the legal rate of interest of the State of Missouri, six percent," while the evidence showed that the agreed rate of interest on the notes and open account was at a higher rate. Respondent rendered a statement to the Caneer Company at regular intervals showing the interest and the insurance premiums charged. No complaints were ever made in regard to these statements until after February 2, 1920; in fact, on August 8, 1911, the Caneer Company wrote respondent that "we have your statement which agrees with our books exactly as we figure it." The record shows other similar expressions of approval of the statements rendered by respondent. It follows that appellant's contention of payment cannot be sustained.

II. Appellant's other contention is that the note is barred by the Statute of Limitations. The foreclosure was started November 14, 1930, and appellant concedes that the running of the Statute of Limitations was arrested that date. Subsequent to the execution of the note, business relations continued between the Caneer Company and respondent until February 2, 1920, during which time respondent advanced large sums of money to the Caneer Company which were referred to in the record as an open account. At one time the Caneer

Company owed respondent approximately $48,000 in this account, in addition to the note in question. On June 27, 1916, the Caneer Company sent some notes payable to it to respondent as collateral for its indebtedness. The letter transmitting these notes reads as follows:

"We take the liberty of sending you some notes for you to hold as collateral until our cotton sells. But when the cotton sells, unless it leaves us owing you more than the note you hold we want these notes returned if we owe you more than that then these notes can remain. . . ."

It is conceded that the open account was closed on February 2, 1920, leaving a balance in the hands of respondent of $5864.97 due the Caneer Company, who directed that it be given as credit on the note.

Appellant contends that the note was barred on February 2, 1930, while respondent contends that there were payments made on the note by the Caneer Company which extended the Statute of Limitations past November 14, 1930, as shown by credits indorsed on the back of the note.

"There is no presumption that the indorsement of a payment on a promissory note was made at the time it bears date. Where the Statute of Limitations is relied on as a defense to a note, the plaintiff should not be permitted to read in evidence credits indorsed on the note without first proving when the indorsements were made, where they bear date prior to the running of the Statute of Limitations. The purpose of the rule is obvious. If the rule were otherwise, it would open wide the door to fraud and afford the holder of the note an opportunity to revive a note already barred by dating an indorsement of payment thereon prior to the bar. . . . [Meffert v. Lawson, 289 Mo. 337, 359, 360, 233 S. W. 31, and cases cited.] Where indorsements are made on a note by the holder thereof prior to the bar of the statute, this will furnish prima facie evidence that payments were made at that time, provided it be further shown that the indorsements were in fact made on the dates which they bear. [Meffert v. Lawson, supra.] However, such prima facie showing may be overcome by positive proof that no such payment was made, and the indorsement on the note was made without the knowledge or consent of the maker of the note. [Regan v. Williams, 185 Mo. 620, 631, 84 S. W. 959, 105 Am. St. Rep. 600.] Indorsements of payments made after the note is barred do not revive the note unless such indorsements are made at the direction of, or with the knowledge and consent of, the debtor. [37 C. J. 1154; Haver, Admr., v. Schwyhart, 39 Mo. App. 303, 305; Brown v. Carson, 132 Mo. App. 371, 376, 111 S. W. 1181; Wester v. Wester's Estate (Mo. App.), 189 S. W. 608; Goddard v. Williamson's Administrator, 72 Mo. 131, 133.]" [Sugent v. Arnold's Estate, 340 Mo. 603, 101 S. W. (2d) 715, l. c. 716.]

It is not the indorsement of a credit but the payment that operates as a renewal of a promise and removes the bar of the Statute of Limitations. Part payment does not take a debt out of the statute unless made under such circumstances as to warrant the inference that the debtor thereby recognizes the debt and signifies his willingness to pay it. [Regan v. Williams, 185 Mo. 620, 84 S. W. 959.]

It is the contention of appellant that the collateral notes were given to secure the open account only and not the $18,000, as it was secured by real property. While the correspondence showing the agreement is not clear in regard to the collateral, yet for the purpose of this case we will assume that appellant is right in her contention, and that after February 2, 1920, the only obligation that the Caneer Company owed respondent was the note.

It is true collateral held to secure one debt cannot be applied to pay another debt between the same parties, absent an agreement to that effect. [Garrett v. Bank of Chelsea, 211 Mo. App. 238, 241 S. W. 87; Turner v. Bank of Mountain View, 19 S. W. (2d) 19.] That is, if a debtor owes a creditor two debts, only one being secured by collateral note, and the maker pays the collateral note, the creditor cannot apply this payment to the debt that is not secured.

In the case at bar, no maker of any of the collateral notes ever paid respondent, but in each instance the maker paid the Caneer Company, who, in turn, sent the payment to respondent. We think, under these circumstances, the payment, when sent to respondent by the Caneer Company, was a voluntary one and kept the note alive. Under appellant's theory of this case, the only indebtedness that the Caneer Company owed respondent was this note, and it must be presumed that it expected these payments to be applied on the note; otherwise, we must presume that when these payments were sent respondent they were sent as gifts to it, which we cannot do. [Miller v. Miller, 169 Mo. App. 432, 155 S. W. 76.]

On February 10, 1922, the Caneer Company sent respondent $400 in payment of a collateral note, the maker of which was J. E. Bruce. The correspondence in regard to this note is as follows:

"Enclosed herewith check for $400.00 on Citizens Bank of Senath, Mo. Please send us the J. E. Bruce note Trust Deed for same amount and oblige."

On February 11, 1922, the following letter was written by respondent to the Caneer Company:

"We have your letter of February 10th, with check on the Citizens Bank for $400.00 together with your request that we return you the J. E. Bruce note for $400.00. We find that the only J. E. Bruce note we have is one sent us on 11-2-1918, on the face calling for $500.00 with endorsements on the back for $300.00, bringing it down to $200.00. This we are sending you herewith, together with Deed of

Trust, and we have credited your account with $399.80, there having been 20c exchange on the check.''

On February 13th, 1922, the Caneer Company wrote respondent the following:

''We have received the Bruce note and trust deed for $200.00. We also see that we have overpaid the note $200.00 and as money is so scarce with us we sure would be pleased for you to send us the overpaid amount. Of course the $200.00 is as much as was collected on note. But take out the 20c for exchange and remit to us for the balance. Thanking you in advance for same we beg to remain.''

It is to be noted from this correspondence that the Caneer Company did not ask that the $400 be returned, but only the $200.00 which was the amount overpaid on the Bruce note. Certainly, this was a voluntary payment by the Caneer Company. It is true that the Caneer Company on several occasions had asked for the return of these collateral notes which respondent was claiming as collateral for the note in question, but no action was taken to recover them.

In the case of Fowler v. Sone, 226 S. W. 995, l. c. 996, the Kansas City Court of Appeals said:

''But it is urged that the evidence which shows the above facts also shows that the credit of March 30, 1909, was made without the consent or authority of said S. H. Sone. As shown above, said Sone and Fowler had a judgment on another. Fowler collected same and applied Sone's half thereof, $21.50, on the note as the credit in question. Some ten days or two weeks thereafter, Fowler told Sone of having credited the said sum on the note. Sone said to Fowler:

'' 'Judge, I never intended to pay—I am sorry you done that. I never intended to pay anything more on this note.'

''He further testified that—

''He told Fowler he 'had paid the other note; there were two notes given, one for $150 and the other $250, and I said, I paid the other note off of $150, and I paid all that has been paid on this, and I did not intend to pay any more on this note.'

''This is all he said to Fowler. He admits he never asked Fowler for the money.

''While this shows that, at the time Fowler credited the note, he had no authority to do so from Sone, yet the latter was told of it in a few days and acquiesced in it. It is true he did so rather regretfully, but nevertheless he acquiesced. He had made the other two payments, and, having done so, had not intended to pay any more and was sorry this further payment was coming out of his pocket, but there is not a word indicating his refusal to allow the credit to go as it had been made. If he had withheld his consent, Fowler could have canceled the credit and sued on the note at any time within eight

years thereafter. The note was given for money which all three makers had borrowed to pay off an obligation the three owed. Sone, in legal effect, consented to the credit, and thus the same became a payment made by a comaker before the Statute of Limitations attached, and this kept the note alive not only as to him but also as to the other two comakers.''

So, in this case, the payment of the Bruce note by the Caneer Company to respondent was, in legal effect, a payment on the note, and at a date less than ten years from November 14, 1930, the date the foreclosure started.

■ Again, on November 1, 1926, the Caneer Company sent respondent $30, with these instructions: ''Enclosed find check for $30.00 to apply on the c/m note of T. J. Shultz for which give us credit.'' To this respondent replied as follows: ''Your favor of Nov. 1st at hand, and we have credited your note with the $30.00 and also made notations on the T. J. Shultz note of a payment of that much under today's date.'' What could the Caneer Company have meant by the phrase, ''for which give us credit'' except to give it credit on the note in question? As previously stated, the only thing that it owed respondent was this note. This extended the Statute of Limitations on the note for a period far beyond November 14, 1930.

It is true there was some evidence that the letter of November 1, 1926, was not written by W. T. Caneer, the general manager of the store, but he testified that he did read the reply of respondent and did nothing to repudiate it until after this suit was brought. At all times the Caneer Company or appellant kept the insurance alive on the building that secured the note and sent the policies to respondent. We think that if only W. T. Caneer had the authority to send the letter of November 1, 1926, he ratified or acquiesced in it by this knowledge gained a few days thereafter, thereby recognizing the debt. [Scrivner v. American Car & Foundry Co., 330 Mo. 408. 50 S. W. (2d) 1001.]

We will not lengthen this opinion by discussing the other alleged payments made on this note, as we are convinced that the payment of either the Bruce note or the Shultz note was within ten years from November 14, 1930, the date the foreclosure was started. We hold that appellant has failed to sustain the burden cast upon her to prove that the note was barred by the Statute of Limitations.

■ III. In her reply brief, appellant says she should have judgment because she has been in adverse possession of the property for ten years. When her petition was filed, it was in two counts. The second count was based upon adverse possession, but before the judgment of the trial court was rendered she voluntarily dismissed the

second count. She raised no such question in her original brief, therefore, this point is not before us.

From what we have said, it follows that the judgment of the trial court must be affirmed. It is so ordered. All concur.