Charles A. BROWN et al.,
Plaintiffs-Respondents,

v.

Sterling M. REDFERN et al.,
Defendants-Appellants.

No. 37019.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Aug. 24, 1976.

McQuie & Deiter, Walter D. McQuie, Jr., Montgomery City, for defendants-appellants.

Edwards, Seigfreid, Runge & Hodge, Jerome W. Seigfreid, Mexico, for plaintiffs-respondents.

DOWD, Judge.

Defendants appeal from the order of the trial court enjoining any interference with plaintiffs' use of a roadway crossing defendants' land. The trial court found that plaintiffs had established an easement across defendants' land which was a right of way giving plaintiffs access to their property.

The claimed roadway begins at Route 19, travels south over defendants' land, and terminates on plaintiffs' property. At trial, many of the area's residents testified that the roadway had followed the same course and had been used by pedestrians and vehicles for as long as they could remember. There was testimony that the roadway was being used in the 1920's and it is shown on a map prepared in 1942 by a United States Geological Survey. This roadway crosses three tracts of land from north to south which will be referred to as the Fitzwater

Tract, the Allemann Tract, and Plaintiffs' Tract.[1] The land is located in Montgomery County, Missouri. Both the Fitzwater and Allemann Tracts are now owned by the defendants. These two tracts will be considered separately in this opinion because the tracts were held in different chains of title prior to acquisition by the defendants at different times in 1973.

The Fitzwater Tract was owned by George Meyer until 1956 when the property was conveyed to the Fitzwaters. The deed to the Fitzwaters reserved the use of a roadway across the tract as such roadway was then in existence, referring to the roadway now disputed by the parties. The Fitzwaters conveyed this property to the defendants in February of 1973. The defendants' deed specifies that the property is subject to existing roadways over the premises.

The Allemann Tract adjoins the Fitzwater Tract at the latter's southern border and was owned by Oscar Saak until 1963. In that year, the Saaks conveyed the property to the Allemanns. The Allemanns conveyed the property to the defendants in November of 1973. Neither the Allemanns' deed nor the defendants' deed mentions any roadway. Oscar Saak testified that a roadway across the Allemann Tract existed before he acquired the property and that he had never formally or informally agreed with the owner of Plaintiffs' Tract concerning use of the roadway. During Saak's period of ownership, George Meyer owned Plaintiffs' Tract. Saak's testimony indicates that he merely acquiesced in the use of the roadway by Meyer and tenants on Plaintiffs' Tract. The evidence before the trial court shows that Vernon Allemann reluctantly allowed the plaintiffs to use the roadway after they purchased their land, and communicated with the plaintiffs about sharing the expense of maintaining the road. In 1965, Allemann wrote to plaintiffs, "as far as to have any objection as to you using the road should not really matter, because it is the road to your farm . . . ."

Plaintiffs' Tract is located to the south of the Allemann Tract. The Meyers owned the property for approximately 30 years before they deeded the property to the plaintiffs on December 28, 1964. The Meyers never lived on Plaintiffs' Tract, but George Meyer permitted tenants to occupy the land. The Doyles lived on this property until some time after 1947. During this tenancy, the Doyles used the roadway in question for access to their home. Ken Doyle moved onto the land again in late December of 1963 and also used the disputed roadway for access. George Meyer used the roadway whenever he went to Plaintiffs' Tract. The plaintiffs have used the same roadway following their inspection and purchase of their property in 1964.

■ The case was tried before the court without a jury. The trial court found that plaintiffs had established an easement by prescription across the Allemann Tract and an easement by prescription and by implication across the Fitzwater Tract. We review this court-tried case upon both the law and the evidence, giving due regard to the opportunity of the trial court to have judged the credibility of witnesses. We are under an obligation to affirm the judgment of the trial court unless the judgment is not sup-

1. From the transcript and exhibits, the relative positions of the three tracts are as follows:

Fitzwater Tract (owned by defendants)

Allemann Tract
(owned by defendants)

Plaintiffs' Tract

N

W———E

S

ported by substantial evidence or is against the weight of the evidence, the judgment erroneously declares the law, or the judgment erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

## THE ALLEMANN TRACT

The law and the evidence before the trial court support its conclusion that plaintiffs and their predecessor in title had established a prescriptive easement over the Allemann Tract. An easement by prescription is created by a use of property shown to be continuous, uninterrupted, visible, and adverse for a period of 10 years. Successive periods of adverse use may be tacked together if privity exists between the users. *Guerin v. Yocum*, 506 S.W.2d 46, 47 (Mo. App.1974); *Trustees of Forestgreen Estates, 4th Addition v. Minton*, 510 S.W.2d 800, 803 (Mo.App.1974). Privity exists between George Meyer and plaintiffs by virtue of Meyer's conveyance of Plaintiffs' Tract to plaintiffs. Meyer, his tenants,[2] and the plaintiffs have used the roadway across the Allemann Tract for access to Plaintiffs' Tract for 30 to 40 years prior to institution of this suit.

The use made of the roadway by owners and possessors of Plaintiffs' Tract has been visible, continuous, and uninterrupted. Both Oscar Saak and Vernon Allemann testified that the roadway could be seen as it crossed the Allemann Tract. Allemann testified that he had shown the defendants the roadway before they purchased. Saak, Allemann, and defendants were aware that owners and possessors of Plaintiffs' Tract used the roadway for ingress and egress. While the roadway was not travelled every day by owners and occupiers of Plaintiffs' Tract, sufficient continuity of use was shown. Whenever Meyer, the Doyles, or the plaintiffs wanted access to Plaintiffs' Tract, they used the roadway across the Allemann Tract. A use is continuous if it is "traveled at such times by the

users as their convenience and business needs required." *Moravek v. Ocsody*, 456 S.W.2d 619, 625 (Mo.App.1970).

The evidence does not show that use of the roadway was interrupted prior to institution of this suit. Several gates have been erected along the roadway in the past 10 years, but these gates never actually interrupted use of the roadway. Prior to 1964, only one gate crossed the roadway, and this gate was never locked against the tenants or owner of Plaintiffs' Tract. Erection of gates on the roadway does not prevent creation of an unrestricted easement if the use is not interrupted or restricted by the gates. *Chapman v. Schearf*, 360 Mo. 551, 229 S.W.2d 552, 555 (banc 1950).

In the late 1960's, one wire barrier was erected across the roadway which caused a deviation from the old roadway, but this was accomplished with the consent of the plaintiffs and did not interrupt their use of their easement. Plaintiffs merely agreed to a change in the course of their easement for the benefit of Vernon Allemann who wanted the roadway to go around his alfalfa field. None of defendants' efforts to deter plaintiffs from using the roadway were successful in interrupting a use which originated at least 30 to 40 years earlier. In view of the fact that plaintiffs' predecessor in title had established a prescriptive easement across the Allemann Tract, we are unable to find any action by Allemann or the defendants of sufficient quality or duration to have upset the plaintiffs' easement. *See Dalton v. Johnson*, 320 S.W.2d 569, 574 (Mo.1959).

Ample evidence also supports the conclusion that the use of the roadway over the Allemann Tract was adverse. A use is adverse if, at the time the use is made, the user does not recognize any authority in those against whom the use is claimed to either prevent or permit its continuance.

---

**2.** A tenant's adverse use of an easement over a third party's land inures to the benefit of the landlord so as to support the landlord's right to

an easement by prescription. *McDougall v. Castelli*, 501 S.W.2d 855, 858 (Mo.App.1973).

*McDougall v. Castelli, supra; Benson v. Fekete,* 424 S.W.2d 729, 738 (Mo.banc 1968). The plaintiffs have shown open, notorious, continuous, and uninterrupted use for more than 10 years, therefore raising a presumption the use was adverse under a claim of right. *Guerin v. Yocum, supra,* at 48. The defendants did not sustain their burden of proving that the use of the Allemann roadway was permissive or under a license. Defendants apparently assert that the use was permitted by the agreement of Vernon Allemann. We need not determine whether Allemann granted permission to use the land. Oscar Saak testified that no formal or informal agreement was reached concerning the use of the roadway during Saak's ownership of the Allemann Tract. Saak testified that it had always been tacitly understood that the roadway would be used to reach Plaintiffs' Tract. Saak's testimony shows an acquiescence by the owner of the servient tenement rather than a grant of permission. Thus, by 1963 when Saak conveyed the Allemann Tract, an adverse use of the roadway had established a prescriptive easement which could not be converted to a permissive use by subsequently granting permission. *Speer v. Carr,* 429 S.W.2d 266, 269 (Mo.1968); *McDougall v. Castelli, supra.*

## THE FITZWATER TRACT

The trial court need not have determined, as it did, whether or not plaintiffs had established an easement by prescription or implication. The evidence before the trial court was sufficient to prove an express easement by reservation across the Fitzwater Tract. The Meyers' deed to the Fitzwaters in 1956 contained the following provision:

> "Reserving, however, unto the said Parties of the First Party [George and Effie Meyer] a roadway over said property herein conveyed as now located."

The parties do not argue that this provision referred to any roadway other than the right of way claimed by the plaintiffs, but the defendants have argued that George Meyer reserved only a personal right to use the roadway.

In interpreting the meaning of a clause in a deed reserving an easement, the intent of the parties is controlling. *Stroup v. Johnson,* 539 S.W.2d 711 (Mo.App. 1976); *Stotzenberger v. Perkins,* 332 Mo. 391, 58 S.W.2d 983, 986 (1933). The evidence introduced at trial indicates that George Meyer intended to create an appurtenant easement benefiting Plaintiffs' Tract. An easement is never presumed to be a mere personal right if it can be fairly construed as an easement appurtenant to some other estate. *Engelhardt v. Gravens,* 281 S.W. 715, 718 (Mo.1926); *Bradley v. County of Jackson,* 347 S.W.2d 683, 687 (Mo.1961).

The evidence in the case before us justifies construction of the Fitzwater deed as reserving an easement appurtenant to Plaintiffs' Tract. When the Meyers conveyed the Fitzwater Tract, they still owned Plaintiffs' Tract. George Meyer's most likely intent was to reserve a right of way benefiting his remaining land. The fact that the easement concerns a roadway long used for access to Plaintiffs' Tract also indicates an intent to create an appurtenant easement. The only use George Meyer made of the easement was to gain access to Plaintiffs' Tract. Meyer's probable intent was to benefit Plaintiffs' Tract, not to reserve a right which was personal. Residents of the area had long used the Allemann roadway to reach property in their possession lying south and southeast of the Allemann Tract. George Meyer would have had this knowledge in mind when he reserved his easement, indicating that the easement was reserved to benefit Plaintiffs' Tract. The evidence in this case as to the nature and subject of the easement reserved suggests that the easement is an incident of possession of Plaintiffs' Tract. It is thus an appurtenant easement. *Lawrence v. Hennessy,* 165 Mo. 659, 65 S.W. 717, 719 (1901). Although the easement reserved in the Fitzwater deed does not, by its terms, extend to the "heirs" or "assigns" of the Meyers, such words of limitation are

not required to create an appurtenant easement. *Stroup v. Jackson, supra; Stoutimore v. Quincy O. & K. C. R. Co.*, 215 Mo.App. 194, 256 S.W. 121 (1923); *see* § 442.460 RSMo 1969.

The fact that the Meyers' deed of Plaintiffs' Tract to plaintiffs included an easement over property lying to the southwest of the plaintiffs' land does not prove that George Meyer intended to reserve only a personal right to use the northern roadway across the Fitzwater Tract. Defendants' brief suggests that Meyer probably believed that he was powerless to convey use of the entire roadway to plaintiffs because he did not own the Allemann Tract. Therefore, defendants' brief argues, Meyer intended to reserve a personal right when he conveyed his northern property to the Fitzwaters. While Meyer's failure to appreciate the extent of his interest in the Allemann roadway may well have been Meyer's motive in securing another access route to Plaintiffs' Tract, we do not believe that such a motive negates an intent to create a perpetual easement across the Fitzwater Tract for the benefit of Plaintiffs' Tract. The circumstances surrounding the reservation of the easement across the Fitzwater Tract indicate that Meyer intended at that time to create an appurtenant easement, and the fact that other estates lie between the dominant and servient tenements does not void the creation of the appurtenant easement. *Benson v. Fekete, supra* at 740.

Defendants have also argued that plaintiffs do not have the benefit of the Fitzwater easement because plaintiffs' deed does not mention this easement. However, one of the chief characteristics of an appurtenant easement is that it runs with the dominant tenement. *Downey v. Sklebar*, 261 S.W. 697, 698 (Mo.App.1924). An appurtenant easement passes with the conveyance of the dominant tenement whether or not specifically conveyed in the deed. *Beldner v. General Electric Co.*, 451 S.W.2d 65, 75 (Mo.1970).

Even though defendants purchased the Fitzwater Tract before they purchased the Allemann Tract, they had notice of the easement across the Fitzwater Tract. The grantee of a servient tenement takes the land subject to all duly recorded prior easements whether such easements are mentioned in his deed or not. *Loumar Dev. Co. v. Redel*, 369 S.W.2d 252, 257 (Mo.1963). The reserved easement in the Fitzwater deed was recorded. In addition, the deed from the Fitzwaters to the defendants stated that the property was subject to existing roadways.

The evidence before the trial court sustains the trial court's finding of an easement by prescription over the Allemann Tract and establishes an easement by reservation across the Fitzwater Tract. Although the trial court's findings noted the reservation of the easement across the Fitzwater Tract, the trial court concluded that plaintiffs had established an easement by prescription or implication across the Fitzwater Tract. We do not believe that such conclusions were necessary to find an easement across the Fitzwater Tract in favor of Plaintiffs' Tract.

In setting forth the course of the easement across the Fitzwater and Allemann Tracts, the trial court relied upon a surveyor's plat, plaintiffs' exhibit number 11. This plat showed the route of the roadway and was prepared in May of 1974. At two points on the marked route, the roadway deviated from the old roadway because wire had been stretched across the old roadway. Evidence before the trial court shows that the northernmost barrier was a short stretch of wire which was not raised above the ground until shortly before this suit was instituted. Until the wire was raised, plaintiffs traveled over the old roadway. The course of plaintiffs' easement has not been altered at this point. The southernmost barricade was a longer stretch of wire erected in the late 1960's. The old roadway was changed with plaintiffs' consent apparently to go around Vernon Allemann's alfalfa field. Plaintiffs thus agreed to an alteration of the route of their easement.

The trial court ordered that the course of plaintiffs' easement was the route followed by the old roadway, without deviation, as set out in the surveyor's plat. This is correct, except for the alteration permitted by the plaintiffs. Accordingly, we set forth the correct easement with the deviation. The route of the easement commences at the northwest corner of the southwest quarter of the northwest quarter of Section 11, thence with the north line of said southwest quarter of the northwest quarter, south 87° 51' east, 700.1 feet to the point of the beginning of the centerline described in the surveyor's plat, thence south 28° 06' east, 720.7 feet to a point, thence south 0° 11' west, 335.0 feet to a point, thence continuing in the same direction approximately 175 feet to a point, thence south 24° 11' east, 100.9 feet to a point, thence south 21° 22' west, 137.5 feet to a point, thence south 3° 11' east, 371.3 feet to a point, thence south 18° 50' west, 550.1 feet to a point, thence south 29° 01' west, 109.7 feet to the end of the centerline described by the surveyor.

The trial court's judgment is correct insofar as the court found that plaintiffs have proven an easement across defendants' property. The location of this easement is as set out above in this opinion. The trial court's order enjoining defendants from interfering with plaintiffs' use of the roadway across defendants' property is affirmed.

CLEMENS, P. J., and McMILLIAN, J., concur.