John W. HALL et ux., Appellants,

v.

Ronald KNAPP et al., Respondents.

No. 27619.

Missouri Court of Appeals,
Kansas City District.

May 31, 1977.

Kranitz & Kranitz, Theodore M. Kranitz, St. Joseph, for appellants.

Rupert G. Usrey, Eiser & Usrey, Oregon, for respondents.

Before SHANGLER, P. J., and HANNA, SMITH and O'LEARY, Special Judges.

TIMOTHY D. O'LEARY, Special Judge.

The Knapp Construction Company, a partnership composed of three Knapp brothers (plaintiff), obtained judgment in this court-tried case in the sum of $1,101.29 against defendants John and Joan Hall, husband and wife (referred to herein as defendant singular for the reason that the husband made all the agreements).

Plaintiff's petition sought recovery for payment of a check in that amount alleging that the parties had agreed on the amount due under an oral contract for construction. Plaintiff asserts that this agreement constitutes an accord and satisfaction.

Defendant's answer denied that there was an accord and satisfaction and counterclaimed alleging that plaintiff failed to perform the contract in a workmanlike manner and as a result defendant's basement leaked water, and prayed for resultant damages.

We set forth the evidence necessary to make clear the trial theories of the parties and the basic disputes between them.

To put it mildly, the parties entered into a rather loose oral agreement which was orally modified, again rather loosely, from time to time for certain additions and improvements to defendant's residence.

For example, at the beginning of their relationship they discussed excavating under defendant's house and constructing a basement with concrete walls. Plaintiff drafted a contract containing a diagram. This contract was drawn in the fall of 1971 and was not signed by either party. The parties agreed that plaintiff would begin work sometime in the winter months, or whenever the plaintiff was not quite so busy, or whenever he could. The work started in the Spring of 1972.

This same casualness governed the whole period of their relationship and therefore it was most difficult for the trial court, as it is for this court, to ascertain just what the various agreements were.

While the original contract was never signed by the parties, plaintiff proceeded with the work based on the general specifications contained in this contract and the parties were to some extent guided by its provisions. Therefore, this original unsigned contract, which we characterize as a "proposal" for purposes of our discussion is

of evidentiary value in ascertaining the intentions of the parties.

Plaintiff undertook to excavate under defendant's existing house and construct a basement as well as construct a rear patio, a driveway, a front porch and steps, and a front sidewalk. The original proposal provided that certain of this work would be done for the price of $4,350. Thereafter as the original proposal was orally modified from time to time and as the work progressed, plaintiff would submit written bills and adjustments in amounts to defendant and obtain partial payments.

Finally on November 10, 1972, plaintiff presented defendant a final itemized bill. At that time defendant discussed several items of construction with plaintiff that he did not believe were quite satisfactory. Plaintiff responded that they had done the best job they could under the circumstances and had done what they agreed to do. The parties discussed this bill item by item and after making a $30 adjustment struck an agreed balance and defendant gave plaintiff a postdated check in the sum of $1,071.29.

There was a dispute as to why the defendant gave plaintiff a postdated check. At trial defendant testified that the reason that he gave plaintiff a postdated check was because he and plaintiff had some disagreements over a water problem in the basement and defendant wanted to see if this water problem improved. He admitted that he did not advise plaintiff of this reason. Plaintiff on the other hand stated that he accepted the check as payment in full and wrote "paid in full 11/10/72" on the final bill. Plaintiff stated the reason that defendant gave for postdating the check was that he wanted an opportunity to sell some corn and put the proceeds in the bank before plaintiff cashed the check. Defendant didn't deny making that statement, but was unable to recall that he did, and at one point in his testimony said he did not give plaintiff any reason for asking him to hold the check.

The trial court resolved this dispute in favor of plaintiff and found that plaintiff had presented an account stated. The court reasoned that it was the intention of the parties to settle the account and there was therefore an accord and satisfaction.[1] The question of intention is rarely capable of positive proof but is to be arrived at by logical deductions from proven facts. *Julian v. Kiefer*, 382 S.W.2d 723 (Mo.App. 1964).

■ The trial court recognized the principle that an account stated need not settle all the dealings between the parties and becomes an account stated only as to the items contained therein and agreed on and found that the accord and its satisfaction was not intended to settle any claims defendant might have for defective workmanship or any other claim asserted in defendant's counterclaim and the court did not rule the defendant's counterclaim on that basis.

The defendant does not dispute the amount of the balance struck nor does he contend that he didn't agree to pay that amount. Rather, defendant argues that he did not intend to settle all claims and that he is entitled to recover on his counterclaim for defective performance. Since the trial court did not preclude defendant's assertion of his claim by finding that the accord and satisfaction was intended to settle these claims, we fail to see any logic in defendant's position that there was no accord and satisfaction at all.

It appears to make little difference in this case whether plaintiff's theory of recovery was a suit on the check, on the accord, on an accord executory, on an account stated, on an account stated settled, or on an accord and satisfaction. In Corbin on Contracts, Volume 6, Section 1303, Professor Corbin discusses some reasons for

1. For a general discussion of accord and satisfaction see 1 C.J.S. Accord and Satisfaction §§ 1 through 25, 36 through 38, 45 through 47;

1 Am.Jur.2d, Accord and Satisfaction, §§ 1 through 7.

confused analysis and judicial grappling with this terminology. He states:

"The term 'account stated' has been used to denote a number of diverse transactions, the facts of which are so different that the legal relation created thereby must also be different."

Professor Corbin separates account stated into two basic categories: One where the parties strike a balance due on an open account before a balance is due and before any breach is committed, and the other where the parties reach agreements reducing unliquidated claims to certainty or compromising disputed claims. Of the latter, Professor Corbin says that the legal effect is quite different than that where the parties reach an accounting by a mere bookkeeping process. § 1305.

Where the parties by agreement turn a disputed or unliquidated claim into a liquidated debt the agreement is binding as a wholly new contract of accord and compromise. § 1309. This is true he states whether the agreement is intended to constitute an immediate discharge of all prior claims, thus consummating an accord and satisfaction by the substitution of a new contract, or specifies instead that acceptance be followed by payment before discharge takes place. In the latter case, the acceptance of the offer constitutes what is called an accord executory. § 1311. It is in this situation that the discharge is suspended until payment has been made; however, it is still a valid enforceable agreement.

To the same effect, see Murray on Contracts, Revised Edition, p. 513, Section 253. *Accord and Satisfaction and Substitute Contract—General principles.*

Under any of these theories defendant would have been able to present his counterclaim and the trial court's findings on plaintiff's claim would have been the same. To put it another way, the defendant has no real argument with the amount agreed on or that it was due under the contract. He insists only that this agreement does not bar his counterclaim for damages which is based on defective performance. The court

did not rule otherwise so this makes it difficult to follow defendant's reasoning.

We next consider defendant's argument that there was no accord and satisfaction for the reason that since this transaction involved a liquidated and undisputed debt (as opposed to an unliquidated and disputed debt) there can be no accord and satisfaction by acceptance of partial payment of a debt unless supported by additional consideration, citing *Johnson v. Johnson,* 352 Mo. 787, 179 S.W.2d 605, 609 (1944). The case cited does stand for that general proposition and it is a well accepted principle of law in most all jurisdictions. But there are three answers to that, it seems to us. The first is that this payment was not a partial payment but rather a payment in full. The second answer is that the amount due under the contract was not a liquidated or undisputed claim as defendant suggests. The third is that the term "accord" is used not only to describe an agreement involving a disputed or unliquidated claim, but it is also used to describe an agreement involving undisputed and liquidated claims.

We note, parenthetically, defendant's inconsistency in claiming that the trial court's award to plaintiff was based on an undisputed and liquidated claim and yet his insistence that the court erred in finding that defendant owed plaintiff that amount.

In the *Johnson* case defendant cites, the court found that the accord or agreement and the promissory note given in satisfaction thereof made an account stated and constituted an accord and satisfaction and cited as authority for their finding, *Caneer v. Kent,* 342 Mo. 878, 119 S.W.2d 214, 216 (1935).

In the *Caneer* case our Supreme Court recited the rule that had long been followed by Missouri concerning the doctrine of account stated. It is (citing from *Pickel v. St. Louis Chamber of Commerce Ass'n,* 10 Mo.App. 191, l.c. 194 (1913)):

" 'When parties having mutual matters of account between them growing out of a contract deliberately account together, and state a balance, and the party who, in

such accounting, is found indebted to the other, pays the debt, or gives a written obligation for its payment, this settlement is so far conclusive between the parties that it cannot be reopened or gone into, either at law or in equity, except on clear proof of fraud or mistake, or of an express understanding that certain matters were left open for future adjustment.'"

It becomes important to determine what claims are considered "unliquidated". The best analysis of the guidelines for this determination we find is in Corbin on Contracts, Volume 6, Section 1290. The first group or class of cases set out there as "unliquidated" are those where the amount of the original claim has never been determined by agreement of the parties or otherwise. The second class of cases are those based on a rate of payment per unit of performance but the number of units may be undetermined or disputed. The third class of cases are those where the terms of the contract or the meaning to be given is doubtful and disputed. There are additional examples as well as illustrative cases.

The contract under consideration fits all three groups recited. Plaintiff submitted bills for additional work based on amounts spent for so many yards of concrete, bills based on a unit price of 55 cents a square foot for concrete work, bills based on materials used, and so on. It is therefore obvious that the claim or bill presented was unliquidated and disputed so that an account stated (or an accord executory) without any additional consideration should be upheld.

Having demonstrated that the agreement constitutes an account stated under *Caneer,* the agreement constitutes a new agreement and when the amount was paid by defendant's postdated check, the transaction may be properly referred to as an account settled. *Perbal v. Dazor Manufacturing Corp.,* 436 S.W.2d 677 (Mo.1968).

Defendant's remaining point is that the transaction cannot constitute an accord and satisfaction because the delivery of a postdated check on which payment was later stopped cannot constitute "satisfaction" until payment of the check has been received, and therefore it is open to the debtor or the creditor to repudiate the proposed, but not a consummated agreement. Defendant cites *Brent v. Westerman,* 123 F.Supp. 835 (W.D.Mo.1954), and *Henderson v. Eagle Express Company,* 483 S.W.2d 767 (Mo.App.1972). These cases and many other authorities support this general rule. However, they also recognize and state that it is the settled law in Missouri that if the check is accepted as payment and not just the "means" through which payment may be obtained, the claim or debt is extinguished by mere acceptance of the check— that is to say a "satisfaction" occurs.

The trial court found that it was the intention of the parties that the postdated check be accepted as payment.

Under this circumstance what is the effect of plaintiff's acceptance of a postdated check? What is the effect of defendant stopping payment on a postdated check? How can a dishonored check be said to constitute a satisfaction or payment? The writer in 60 Am.Jur.2d, Payment, § 48, p. 645, notes:

"Some courts have reasoned that if the check is dishonored, such as for insufficient funds, there is no payment of the underlying debt, because the agreement to accept the check is without consideration and void and the creditor is relieved from his agreement, whether the debtor acted fraudulently or in good faith, since payment with a worthless check is like payment with counterfeit money. But other courts hold that if a creditor agrees to accept a draft or check in absolute payment, the underlying debt is extinguished by delivery of the check, (Footnote 9: *Brent v. Westerman,* (D.C.Mo.) 123 F.Supp. [835] 838) even though the debtor stops payment on the check (Footnote 10: *Weinberg v. Globe Indemnity Company* [Mo.App.1962] 355 S.W.2d 341) —so that the underlying debt is dis-

charged but there is still liability on the check (Footnote 11: 11 Am.Jur.2d Bills and Notes, Section 590)—or the check is never presented for payment."

*Griffin v. Priest,* 137 S.W.2d 685 (Mo.App. 1940) which was cited by the court in *Brent v. Westerman, supra,* a predated check was given to pay the balance of a claim allowed by the probate court. It was agreed that plaintiff would hold the check for collection until defendant could arrange for payment when presented. The check was later deposited several times but was not paid. This court stated the general rule that acceptance of a note, bill or check does not constitute payment of an underlying debt, but stated that if the note, bill or check is intentionally received as payment, the debt is thereby discharged. So it held that where the creditor accepts a note, bill or check with the intention of receiving it as payment the debtor is discharged and the debt extinguished.

█ We conclude that the trial court correctly ruled that the transaction was a settlement of an account stated which constituted an accord and satisfaction. (1 C.J.S. Accord and Satisfaction § 45)

█ It is appropriate at this point to note that under appellate review in the court-tried case we are under the obligation to affirm the judgment of the trial court unless the judgment is not supported by substantial evidence or is against the weight of the evidence, the judgment erroneously declares the law, or the judgment erroneously applies the law. Rule 73.01; *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Brown v. Redfern,* 541 S.W.2d 725 (Mo.App. 1976).

We have already concluded that the finding on plaintiff's claim meets this test. We now consider the finding on defendant's counterclaim in this framework.

The basis of defendant's counterclaim is that plaintiff failed to perform the terms of the contract in a workmanlike manner; that is, its performance was defective in

that defendant was plagued with problems of seepage and surface running water which defendant alleges to be a result of improper backfilling, failure to apply a cement or tar coating to the foundation walls, and failure to install drain tile to take care of surface water and seepage through the basement floor.

█ The trial court found that surface water did come through the basement walls and did seep through the basement floor. However, the trial judge found that the agreement between the parties did not provide that the basement walls be waterproofed as the parties did not believe that such waterproofing was necessary, nor did it provide for drain tiles or even backfilling and grading. He further found that some of the leakage through the basement walls was caused by improper backfilling and grading so that the water was permitted to run into the basement and settle around the foundation rather than run away from the house and that this caused some settlement in the patio and parts of the basement. But he found that the backfilling was done partly by plaintiff and partly by defendant and he concluded that since he could not determine whether plaintiff's backfilling or defendant's backfilling caused the drainage problem and resultant damages that defendant had failed in his burden of proof. Finally the court concluded that plaintiff's performance under the contract was not defective and that defendant did not sustain any damage as a result of plaintiff's performance.

There is ample evidence to support these findings. We have already alluded to the looseness and casualness of the oral agreements and oral modifications of the contract as well as the unsigned "proposal" that the parties relied on in proceeding with this work. We note that the "proposal" after reciting that the specifications were for "putting basement under old house" provided "*Backfilled;* owner agrees not to backfill until seven days after the foundation is poured. Backfill is done at owner's expense and any damage to the foundation

shall be the responsibility of the owner, unless backfill is done by contractor."

Defendant did not prove to what extent each of the parties did the backfilling or the grading of the ground so that the surface water would run away from the house. Defendant did testify that he and a hired hand did part of the backfilling.

It is important to point out that at the time of this agreement the residents of St. Joseph, Missouri, had not had any water problems in the area for some fifteen years according to defendant's own experts. Plaintiff testified that he drafted some two or three hundred agreements a year before this contract and that you could not sell waterproofing or drain tile until the rainy season set in and that since that time most all of his contracts have these particular provisions. The witnesses all agreed that until the summer of 1972 (shortly after completion of this contract), when the area had excessive rainfall, that there had been no significant water problems in that area. They stated that the two years subsequent to the completion of this contract were exceptionally wet years and that the water table rose to such an extent that the water would seep through basement floors in addition to the problems of surface water seepage through the walls.

Both of defendant's experts testified that structurally the basement wall was sound. They both conceded that the contract did not provide for waterproofing or drain tile. Mr. Broomer, one of defendant's experts, observed that although architects specify these provisions in commercial basement work, that 90% of the residential work is not done in that fashion.

Both of defendant's experts opined that in order to correct defendant's problem, it would be necessary to apply a waterproofing coat to the basement walls and to install drain tiles to prevent seepage through the floor resulting from the high water table as well as to grade around the foundation in a manner that would cause the surface water to run away from the house.

It appears that the work was done according to the plans and agreements which were approved by both plaintiff and defendant; that although hindsight would dictate provisions in the contract for both waterproofing and drainage tile, this contract did not so provide; that although some of the water seepage was the result of improper backfilling, the court was unable to determine from the evidence the extent to which each party contributed to that damage; and that plaintiff performed his contract in a workmanlike manner.

■ The burden of proof was upon the defendants to prove defective performance and causal connection. The trial court concluded that defendant failed in his burden in both respects.

The facts set out amply support the trial court's findings and conclusions; furthermore, findings of the trial court are not lightly to be disturbed and should be deferred to unless they are in conflict with a preponderance of the evidence or disclose a manifest abuse or clear abuse of discretion. *Rodgers v. Rodgers*, 505 S.W.2d 138, 140 (Mo.App.1974) and *Murphy v. Carron, supra.*

Finding no such conflict or abuse and believing that the judgment of the trial court is appropriate and correct, we affirm.

All concur.