**Ray S. HOMAN, Olive L. Homan and Jimmie R. Homan, Appellants,**

v.

**Thomas L. HUTCHISON and Mildred Hutchison, Respondents.**

**No. WD 43830.**

Missouri Court of Appeals, Western District.

Nov. 5, 1991.

John T. Key, California, for appellants,

Douglas Abele, Boonville, for respondents.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Ray S. Homan, Olive L. Homan and Jimmie R. Homan appeal from a judgment denying declaratory relief on their claim of a prescriptive road easement and awarding damages against Jimmie R. Homan for physical damage to personal property. The Homans present five points on appeal, claiming the trial court erred by: (1) holding that a prescriptive easement was not established across the Hutchison land by their predecessors in title; (2) ruling that a 1922 deed of the roadway conveyed fee title and not an easement where no ambiguity in the title existed and extrinsic evidence was improperly considered; (3) holding that appellants' usage of the road was not adverse, but permissive in nature; (4) holding that Jimmie Homan's use was not adverse, but permissive in nature; and (5) awarding damages to the Hutchisons for damages to gates placed across the road. The judgment of the trial court is affirmed.

The Homans and the Hutchisons own adjoining parcels of real estate in Moniteau County, Missouri. The land was originally owned by the Thixton family. The Thixton family cemetery, with graves dating back to the Civil War, is located on this property. In 1922, Henry and Geneva Thixton, who then owned the Hutchison tract, conveyed property to the Thixton Cemetery Association. The legal description in the warranty deed described the property conveyed as follows:

And which is to be used as a private cemetery exclusively: Beginning at a point 24¾ feet East from the Southwest corner of the Northwest quarter of the Northwest quarter of Section 26, Township 44, Range 17, thence East 38½ rods; thence North 5 rods, thence West 38½ rods, thence South 5 rods to place of beginning, being a parcel of land 5 rods wide by 38½ rods long.

Also a strip of land 24¾ feet wide off of the West side of said Northwest quarter of the Northwest quarter of said Section 26. Said strip of land to be used as a private road to the above mentioned cemetery.

Sometime in the late 1930's or early 1940's, a rough roadway was established on this strip. This roadway has been used for access to the cemetery and is commonly referred to as the "Thixton Cemetery" road. In subsequent conveyances and other legal documents, the totality of the property deeded to the cemetery association was excepted from the descriptions of real estate being conveyed or encumbered.

In 1958, Ray and Olive Homan purchased real estate described as the "SE¼, NE¼ Sec. 27 and SW¼, NW¼, Sec. 26, all in T44N, R17W, Moniteau County, Missouri." Prior to this purchase, Ray Homan spoke with Elmer Thixton and Zora Charles, trustees and officers of the Thixton Cemetery Association, and received permission to use the roadway. He also testified that he believed that the road was a public road. Appellants utilized the roadway after said permission was given on a daily basis.

In 1963, the Hutchisons purchased real estate adjoining the Homan land, described as the "NW¼, NW¼, Sec. 26, T44N, R17W, Moniteau County, Missouri." The deed contained the following exception: "except

a tract in the Southwest corner thereof for cemetery, and except a strip 24¾ feet wide off the West side thereof for road."

In 1969, Jimmie Homan purchased the "E½, NE¼, NE¼, Sec. 27, T44N, R17W, Moniteau County, Missouri." He testified both at trial and by deposition that he claims the "same right that his father claims." Both the property owned by Jimmie Homan and the property owned by Ray and Olive Homan have other means of access; the cemetery roadway has never been the sole means of access.

In September, 1988, the Thixton Cemetery Association, by quit claim deed, conveyed to the Hutchisons its interest in the cemetery road strip and a portion of the adjoining property that had not been used for cemetery purposes. At the time of the purchase, the Hutchisons agreed to grant the Thixton Cemetery Association an easement to use the cemetery road. This agreement was reduced to writing in July, 1989.

In October, 1988, the Hutchisons erected a gate across the road, the first of four gates. The gate was not locked and the Homans were not denied access to the road. They were asked, however, to shut the gate upon leaving. Not only was the gate left open by the Homans, Jimmie Homan treated the first gate so roughly it had to be replaced. The second and third gates were also damaged by the actions of Jimmie Homan.

The Homans filed suit against the Hutchisons, asking the court to declare that the Homans had an easement in the cemetery road and that the Hutchisons be enjoined from obstructing the road. The Hutchisons counterclaimed, asking for damages for the harm done to the gates. Trial on the matter was had on May 1, 1990.

The trial court entered judgment in favor of the Hutchisons on both the Homans' claim and on the counterclaim. The court found that the original conveyance to the Thixton Cemetery Association was in fee simple and that the Homans' use of the road had been permissive, and not adverse. The court further found that Jimmie Homan knowingly caused damage to the gates erected by the Hutchisons and awarded $100.00 in damages on the counterclaim. The Homans appeal from this judgment.

In Point I, the Homans claim that the trial court erred in holding that no prescriptive easement was established by Ray and Olive Homan's predecessors in title, because the evidence demonstrated open and continuous use from as early as 1876 and the trial court failed to apply the legal presumption of adverse use.

Review of this court-tried case is performed pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence or unless it erroneously declares or applies the law. *Id.* at 32. Deference is given to the implicit determination of credibility made by the trial court and the evidence and all permissible inferences therefrom are viewed in the light most favorable to the verdict. *Johnston v. Bates*, 778 S.W.2d 357, 363 (Mo.App.1989).

The elements essential to the creation of a prescriptive easement are that the use of certain property be: (1) continuous and uninterrupted for the period of prescription; (2) adverse; (3) under a claim of right; and (4) with notice to the owner of the use and the claim of right. *Roberts v. Quisenberry*, 362 Mo. 404, 242 S.W.2d 26, 28 (1951). The period of prescription in Missouri, under § 516.110, RSMo 1986, is ten years. The ten-year period of prescription can be created by the tacking together of successive owners' periods of continuous, uninterrupted, adverse use, each of which may be less than ten years but with their total amounting to ten years or more. *Johnston v. Bates*, 778 S.W.2d at 361. A use is not deemed to be adverse where the user recognizes the authority of those against whom the use is claimed to prevent or prohibit the use. *Hodges v. Lambeth*, 731 S.W.2d 880, 882 (Mo.App.1987). The law does not favor prescriptive easements, thus the requirements for their establishment must be proven by clear and convinc-

ing evidence. *Gill Grain Co. v. Poos*, 707 S.W.2d 434 (Mo.App.1986).

The Homans cite *Speer v. Carr*, 429 S.W.2d 266 (Mo.1968), for the proposition that a roadway of ancient unexplained origin gives rise to a presumption of usage adverse and under claim of right. In *Speer*, it was undisputed the roadway had been openly and continuously used for a period of forty to sixty years prior to the claim of prescriptive easement. *Id.* at 268. The *Speer* court set forth the following language from *Fassold v. Schamburg*, 350 Mo. 464, 166 S.W.2d 571, 572 (1942):

> [I]n the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10–year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so.

*Speer v. Carr*, 429 S.W.2d at 268. While it is true the presumption of adverse use will stand and suffice the claimant if not rebutted by evidence in contradiction, it is just as true that it will lose all force and vanish when the facts appear in the evidence to show permission. *Bridle Trail Association v. O'Shanick*, 290 S.W.2d 401, 406 (Mo.App.1956). If such facts appear, "the existence or nonexistence of adverse user must be determined from those facts just as if no presumption had ever been operative." *Id.* (citations omitted). Furthermore, a permissive use cannot ripen into a prescriptive use. *Johnston*, 778 S.W.2d at 362. A use which is permissive in origin remains permissive until a right hostile to the owner is distinctively and positively asserted and made known to him. *Fassold*, 166 S.W.2d at 572. Long and continued use alone will not ripen into a prescriptive easement. *Bridle Trail Association*, 290 S.W.2d at 405.

The Homans characterize the evidence as supporting an open and continuous usage from at least 1876 without indication of permissive usage. They maintain that a roadway existed in the same location as the Thixton cemetery road and that the roadway is shown on an 1876 land atlas. A review of the evidence, however, reveals that the roadway shown on the atlas was not located at the same spot as the Thixton cemetery road.

Earl Thixton, who lived on the property that now belongs to the Hutchisons from 1917 until 1933, testified that there had never been a roadway or passageway where the road in dispute was located. A "trail for wagons and livestock" and an "old trail next to [the] house and down through the woods" were mentioned in Earl Thixton's testimony, but neither were located at the same place the cemetery road was located. Other witnesses also testified that no road or trail existed where the cemetery road is presently located.

It is unclear from the record where the wagon trail was located but wherever it was, it was clearly not in the same location as the roadway in which the Homans claim prescriptive rights. The method by which prescriptive rights are acquired is akin to the acquisition of title to real estate by adverse possession. *Bridle Trail Association*, 290 S.W.2d at 405. In the adverse possession context, the exact location of the disputed lands with precise, ascertainable and recognizable boundaries is necessary, lest a judgment be rendered void as based on speculation and conjecture. *Green v. Lange*, 797 S.W.2d 765, 769 (Mo. App.1990). The analogy to adverse possession is useful in the instant case. There is nothing that places older roadways and trails in the same location as the disputed roadway. Absent a more precise and exact description of the claimed 1876 use, the Homans' argument is merely based on speculation and conjecture.

The Homans next suggest that there was ample and uncontroverted evidence that the roadway described in the 1922 conveyance was used continuously for access to the property that now belongs to the Homans between the mid–1930's and 1958. The term "continuous" refers to the behavior of the claimant and is to be construed reasonably, requiring use often enough to constitute notice of the claim

and to show there was no break in the claimant's state of mind. *Johnston v. Bates,* 778 S.W.2d at 363–64. The Homans point to testimony given by Norman Fry, a resident of the area, and by Thomas Hutchison in support of their position. Mr. Fry's testimony was that he had traveled the lane two or three times to take feed back in there in the early 1940's. Thomas Hutchison did testify that the lane was used as access to the Thixton homestead, but could not remember an exact date, saying it was used in "maybe '35 or '40." The evidence falls short of establishing the necessary ten year period of continuous use.

*Brown v. Redfern,* 541 S.W.2d 725 (Mo. App.1976), was cited by the Homans for the proposition that the extant easement was appurtenant to the property and passed with the land even though not specifically described in the deed. *Brown* is distinguishable from the instant case. In *Brown,* an easement was established by evidence showing visible, continuous and uninterrupted use over one of the disputed tracts of land. *Id.* at 728. However, another disputed tract of land had an easement running across it that was expressly created by deed. *Id.* at 729. It was this appurtenant easement, originally created by a grant in a deed, which ran with the dominant tenement whether or not specifically conveyed by a subsequent deed. *Id.* at 730. In the instant case, it was not proven that an easement had been established by visible, continuous and uninterrupted use between the mid–1930's and 1958 for any ten year period. Nor was any easement expressly created by grant in a deed. Point I is denied.

■■■■■ The Homans next claim that the trial court erred in ruling that the 1922 deed to the Thixton Cemetery Association conveyed fee title and not an easement. The Homans claim that the trial court failed to apply the legal presumption that the grant of a "road" means an easement and not a fee simple. Further, it is claimed that the trial court considered improper extrinsic evidence in reaching its determination.

The 1922 deed contains the following language in its grant of the land used for the roadway: "Also a strip of land 24¾ feet wide off of the West side of said Northwest quarter of the Northwest quarter of said Section 26. Said strip of land to be used as a private road to the above mentioned cemetery." The cases that the Homans cite point out that there is a strong, almost conclusive presumption that the words "road" or "roadway" seldom have been defined to mean land, but instead indicate a right of passage. *Franck Bros., Inc. v. Rose,* 301 S.W.2d 806 (Mo.1957); *Robert Jackson Real Estate Co. v. James,* 755 S.W.2d 343 (Mo.App.1988); *Hartman v. J & A Development Co.,* 672 S.W.2d 364 (Mo.App.1984); *Fischer v. Trentmann,* 672 S.W.2d 139 (Mo.App.1984). This is only a presumption, however. Where an ambiguity exists in the granting clause, the court may look to the surrounding circumstances, including other deeds, to ascertain the grantor's desires. *Columbia v. Baurichter,* 729 S.W.2d 475, 479 (Mo.App.1987).

An ambiguity does exist in the language of the grant. As in *Baurichter,* the conflict in the grant is between the words, "strip of land" and the word "road." The language "strip of land" is indicative of the conveyance of a fee simple absolute. *Baurichter,* 729 S.W.2d at 479; *Clevenger v. Chicago M. & St. P. Ry. Co.,* 210 S.W. 867, 868 (Mo.1919). As pointed out above, the word "road" creates presumption that a right of passage and not a fee simple was conveyed. *Franck Bros.,* 301 S.W.2d at 811. In resolving this ambiguity, other evidence in the record must be reviewed to discern the grantor's intent.

A partial abstract of title was introduced into evidence. It contains three deeds and a deed of trust which specifically except out of the legal description the entire conveyance of the cemetery tract including the land used as a road. The absence of references to the road in these documents is consistent with the grantor's intent to convey a fee simple. The 1922 conveyance which is the subject of this action was between members of the Thixton family. Earl Thixton, Henry Thixton's son, testified that there was no intent on his father's

part to retain any use for himself; that the only reason that the road existed was just for the cemetery.

There are other facts in the record that also support the trial court's determination that the grant was one in fee simple. There was no road for passage across the property at the time of the conveyance. The strip of land deeded to the Thixton Cemetery Association was not located in the middle of the tract of land but was off at the end of a parcel of land. The cemetery road was not used to gain access to landlocked property as the Homan's had other means of access to their properties. These details differ, in whole or in part, from cases cited by the Homans in support of their position. Point II is denied.

■ In Point III, the Homans contend that the trial court erred in holding that their use was not adverse but permissive in nature. At the time of Ray and Olive Homans' purchase of their property, the Thixton Cemetery Association was the fee simple owner of the cemetery road. Ray Homan testified that he did not ask permission to use the road, but that testimony was impeached by his deposition statements wherein he clearly testified to a permissive use. Ray Homan also testified he believed that the cemetery road was a public road.

The cases cited by the Homans are inapposite, as most require the characterization of the Thixton Cemetery Association as owners of a non-exclusive roadway easement. The question of what the Thixton Cemetery Association owned has already been addressed and decided. It was a fee simple owner of the road in question and as such it could give permission for the Homans to use the road. Officers-trustees of the Thixton Cemetery Association were contacted by Ray Homan before his purchase of property in 1958. These officers-trustees granted Ray Homan permission to use the road and consented to his maintenance of the road.

"An adverse use of another's land has been defined as a use not made in subordination to the owners." *Meinhardt v. Luaders*, 575 S.W.2d 213, 214 (Mo.App.

1978). If a use is permissive, it cannot ripen into a prescriptive use. *Johnston*, 778 S.W.2d at 362. A permissive use remains permissive until a distinctive and positive assertion of a right hostile to the owner is made known to him. *Fassold*, 166 S.W.2d at 572. There is no evidence that a distinct and positive assertion of a right hostile to the true owner was ever made by the Homans. That the Homans maintained the road is not an assertion of such a right. In *Cook v. Bolin*, 296 S.W.2d 181, 188 (Mo.App.1956), the person seeking an easement, "did some work, even some grading at places, upon the road and ... maintained the gates thereon." This was not held to be an adverse assertion to permissive use. *Id.*

■ Ray Homan also testified that he believed the road to be a public road. The Homans cite *Johnston*, 778 S.W.2d at 364, for the proposition that a belief that the roadway is open to public use, by definition supplies the element of adverse use. In *Johnston*, the plaintiff never asked permission to use the roadway, he felt that it was a public street. *Id.* at 364. The court gave such testimony the following meaning: "To us, this testimony shows plaintiff began his use of the roads without recognition of the right in any person or party connected with this cause to permit or prohibit his use, and, therefore, his use was 'not made in subordination' to those persons or parties." *Id.* Such is not true in the instant case. From the outset Ray Homan recognized the right of the Thixton Cemetery Association to permit his use. Furthermore, in *Rosemann v. Adams*, 398 S.W.2d 855 (Mo. 1966), the belief that a road is a public road does not supply an element of adverse use. In *Rosemann v. Adams*, Mr. Adams testified that he believed the street in question belonged "to the Village." *Id.* at 858. The Supreme Court described the effect of such a belief, saying: "His use of the area under such an assumption was, therefore, neither exclusive nor under individual claim of right. No claim of individual right of easement by prescription may arise by virtue of such use...." *Id. See also Mackey v.*

*Weakley,* 439 S.W.2d 219, 226 (Mo.App. 1969). Point III is denied.

The Homans also claim that the trial court erred in holding that Jimmie Homan's use was not adverse but permissive in nature. While it is true that Jimmie never asked permission to use the road, his father, Ray Homan, did so and Jimmie testified that he was claiming the same rights as his father claimed. Jimmie lived with his parents before his purchase of property in 1969. He is engaged in a joint farming operation with them. His use could also be found to be permissive. *Meinhardt,* 575 S.W.2d at 215.

In *Meinhardt,* the Meinhardts and the Fisks claimed an easement over a 30 foot section a private driveway. No easement was found. *Id.* at 214. The Meinhardts' use was found to be permissive. The Meinhardts sold a portion of their property to the Fisks. *Id.* The court stated, "[a] use which was permissive as to the Meinhardts could also be found to be permissive as to the Fisks." *Id.* at 215. Ray Homan, in his deposition, testified that he believed that his son's use of the roadway has been with the permission of the Thixton Cemetery Association. Jimmie Homan was present during his father's deposition. In his own deposition, Jimmie was asked whether he would have given the same basic answers to the questions answered by his father. He stated that he would. He didn't have any quarrel with anything his father said. In light of the acknowledged derivative nature of Jimmie Homan's claim, it was not error for the court to find that Jimmie's use was a permissive use. Point IV is denied.

Finally, the Homans take exception to the trial court's award of damages to the Hutchisons on their counterclaim. This claim of error is predicated on the assumption that Jimmie Homan had a non-exclusive prescriptive easement in the roadway and that the damage to the gates was caused by the interference of the Hutchisons with Jimmie's lawful possessory right to unobstructed passage. Jimmie Homan did not possess a non-exclusive prescriptive easement nor a right to unobstructed passage over the road.

Jimmie Homan's abuse of the gates is supported by substantial evidence. His own testimony establishes the damage he inflicted upon the gates. The amount the judge awarded, $100.00, was also supported by the evidence. The Homans' final point is denied.

The judgment of the trial court is affirmed.

All concur.